DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jim's Sales, Inc., appeals from the judgment of the Lorain County Court of Common Pleas, which affirmed the adjudication order issued by Appellee, The Ohio Motor Vehicle Salvage Dealer's Licensing Board, which revoked its salvage dealer license. We affirm.
 I. {¶ 2} Jim's Sales, Inc. was a licensed motor vehicle salvage dealer located in Grafton, Ohio, in Lorain County. In April 2003, a Bureau of Motor Vehicles field investigator visited Jim's salvage facility, and determined that Jim's was not engaged primarily in the sale of salvage motor vehicle parts, in violation of R.C. 4738.03(A), but instead was primarily engaged in the sale of salvage motor vehicles.[1] The investigator recommended revocation of Jim's Sales' license.
 {¶ 3} Based upon the investigator's findings, the Ohio Motor Vehicle Salvage Dealer's Licensing Board (the "Board") charged Jim's Sales with violation of R.C. 4738.03(A). Jim's Sales was notified of an opportunity for a formal adjudication hearing to determine whether his license should be suspended or revoked, in accordance with R.C. Chapter 119. Two hearings were held regarding the matter before the Board.
 {¶ 4} On April 1, 2004, the Board issued an adjudication order that found that Jim's Sales was not operating primarily for the purpose of selling at retail salvage motor vehicle parts, and that the facility did not have a minimum area of 50,000 square feet, in violation of R.C. 4738.03(A). The Board concluded that the R.C. 4738.03(A) violation constituted grounds for denial of Jim's Sales' license pursuant to R.C. 4738.07(B) and revoked the salvage dealer's license per R.C. 4738.12.
 {¶ 5} Jim's Sales filed a notice of appeal from the adjudication order to the Lorain County Common Pleas Court pursuant to R.C. 119.12. Jim's Sales applied for a stay of the adjudication order, which was granted. The trial court affirmed the adjudication order, concluding that the Board's findings were supported by reliable, probative, and substantial evidence and in accordance with law.
 {¶ 6} Jim's Sales timely appealed to this Court, asserting seven assignments of error for review.[2]
 II. A. First Assignment of Error
"The trial court erred in failing to conduct a De novo review of the questions of law raised by Jim's Sales, Inc."
 {¶ 7} In its first assignment of error, Jim's Sales asserts that the trial court erred by failing to conduct a de novo review of the questions of law Jim's Sales raised, and specifically, that the court failed to set forth findings of fact and conclusions of law in its order affirming the adjudication order.
 {¶ 8} In its order, the trial court affirmed the Board's order, explicitly finding that the Board's decision was supported by reliable, probative, and substantial evidence and was in accordance with law, in compliance with its scope of review as set forth in R.C. 119.12. Thus, the court implicitly overruled all of Jim's Sales specific arguments in its order. Jim's Sales does not point to any legal authority that requires a trial court to issue findings of fact and conclusions of law in an appeal pursuant to R.C. 119.12. Notwithstanding the fact that Jim's Sales did not even request such findings and conclusions from the trial court, the trial court was not required to issue findings of fact and conclusions of law because it was not sitting as the trier of fact in this case. See, generally, Dore v. Miller, 9th Dist. No. 03CA008416, 2004-Ohio-4870, at ¶¶ 23 26.
 {¶ 9} Therefore, we cannot find that the trial court erred by not issuing findings of fact and conclusions of law in this case. Jim's Sales' first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred in failing to determine that R.C. §§4738.01, 4738.03, and 4738.12 are violative of Jim's Sales rights under the Fourteenth amendment to the U.S. constitution and Article I, Section 2 of the Ohio constitution."
 {¶ 10} In its second assignment of error, Jim's Sales essentially asserts that it was in error for the trial court to not conclude that R.C. 4738.01 and 4738.12 violate his right to equal protection under the laws as guaranteed by the United States and Ohio Constitutions. Jim's Sales argues that because the laws governing new and used car dealers do not prohibit these dealers from primarily selling salvage motor vehicles, that this worked an equal protection violation on Jim's Sales. Furthermore, Jim's maintains that the requirement, that salvage motor vehicle dealers be primarily engaged in the retail sale of parts as opposed to vehicles, bears no rational relationship to a legitimate state purpose. Jim's contentions are unavailing.
 {¶ 11} Statutes enacted by the legislature enjoy a presumption of constitutionality, and the party challenging the statute bears the burden of establishing unconstitutionality beyond a reasonable doubt. Simcox v. Westfield Cos. (Apr. 29, 1998), 9th Dist. No. 2697-M, at *11, citing Conley v. Shearer
(1992), 64 Ohio St.3d 284, 289. Because the Federal and Ohio Equal Protection Clauses are construed identically, we will analyze Jim's federal and state constitutional claims together. See Dolis v. City of Tallmadge, 9th Dist. No. 21803, 2004-Ohio-4454, citing Desenco, Inc. v. Akron (1999),84 Ohio St.3d 535, 544.
 {¶ 12} "Under the equal protection clause, in the absence of state action impinging on a fundamental interest or involving a suspect class, a rational basis analysis is normally used. Where the traditional rational basis test is used great deference is paid to the state, the only requirement being to show that the differential treatment is rationally related to some legitimate state interest." Conley, 64 Ohio St.3d at 289, quoting Stateex rel. Heller v. Miller (1980), 61 Ohio St.2d 6, 11.
 {¶ 13} Jim's does not maintain that this case involves a fundamental right or a suspect class, but rather argues that the regulations do not further any legitimate state purpose. The Board argues that the legislature's requirement, that a certificate of title or salvage certificate of title be surrendered when a vehicle is destroyed or dismantled and sold for parts, see R.C 4505.11(B) (G), ensures that the vehicle is lawfully transferred and disposed. It has been recognized that the state has a legitimate interest in protecting consumers from dishonest and fraudulent sales practices. See Jurek v. OhioMotor Vehicles Dealers Bd. (1994), 99 Ohio App.3d 437, 439. See, generally, R.C. 4501.02 (providing that all laws relating to the licensing of dealers are to be liberally construed "to the end that the practice or commission of fraud in the business of selling motor vehicles and of disposing of salvage motor vehicles may be prohibited and prevented"). While Jim's insists that this cannot be a legitimate purpose, it is not within the scope of this Court's analysis to question the soundness of the legislature's policy reasons. See Klein v. Leis,99 Ohio St.3d 537, 2003-Ohio-4779, at ¶ 14 ("In reviewing the reasonableness of [legislation] * * * [i]t is not a court's function to pass judgment on the wisdom of the legislation, for that is the task of the legislative body which enacted the legislation. Further, unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion." (Internal quotations omitted.)).
 {¶ 14} The Board also points out that while the General Assembly has created separate licenses to regulate dealers primarily engaged in the sales of vehicles, see R.C. Chapter 4517, and those engaged in primarily the sale of salvage parts, see R.C. Chapter 4738, a dealer is not prohibited from obtaining both licenses, so long as he complies with both statutory requirements.
 {¶ 15} Jim's Sales attempts to fashion an equal protection argument by comparing salvage dealers to automobile dealers. "`The purpose of the equal protection guarantee is to ensure that similarly situated persons are treated similarly under the law.'"Grissinger v. LaGrange Zoning Bd. (Mar. 14, 2001), 9th Dist. No. 00CA007682, at *14, quoting Andres v. Perrysburg (1988),47 Ohio App.3d 51, 55. Classifications are not constitutionally forbidden, so long as governmental decision makers do not "treat differently persons who are, in all relevant respects, alike." Engelskirger v. Wadsworth, 152 Ohio App.3d 132, 136,2003-Ohio-1291. If a statute does not create a classification that treats similarly situated individuals differently under like circumstances, "`there is no discrimination which would offend the Equal Protection Clauses of either the United States or Ohio Constitutions.'" In re James (May 22, 1996), 9th Dist. No. 17448, at *10, quoting Conley, 64 Ohio St.3d at 290. In this case, Jim's has not alleged, let alone demonstrated, that salvage dealers and other motor vehicle dealers are similarly situated classes.
 {¶ 16} For the foregoing reasons, we find that Jim's Sales has failed to meet its burden in challenging the constitutionality of these statutes. We cannot find that the statutes violate the Equal Protection Clause under either the U.S. or Ohio Constitution. Jim's Sales' second assignment of error is overruled.
 C. Third Assignment of Error
"The trial court erred in failing to determine that R.C. §§4738.01, 4738.03 and O.A.C. § 4501:1-4-01 are violative of Jim's Sales' rights under the due process clause of the fifth andfourteenth amendment to the U.S. constitution and article 1, Section 16 of the Ohio constitution in that the statutes are void for vagueness."
 {¶ 17} In its third assignment of error, Jim's Sales contends that the trial court erred when it failed to declare R.C. 4738.01
and 4738.03, as well as Ohio Adm. Code 4501:1-4-01, are void for vagueness, in violation of his due process rights under both the United States and Ohio Constitutions. We disagree.
 {¶ 18} As previously stated, we begin with the presumption that that the statute and administrative code section are constitutional. See Simcox, at *11; Conley,64 Ohio St.3d at 289. Furthermore, Jim's has the burden of showing that the laws are invalid. See id.
 {¶ 19} When construing provisions of a statute to ascertain the legislature's intent, this Court looks first to the statutory language itself. State v. Stallings, 150 Ohio App.3d 5,2002-Ohio-5942, at ¶ 15. If a term is not defined by statute, we interpret it according to its common, ordinary meaning. Id.; R.C.1.42.
 {¶ 20} The vagueness analysis is also identical in the federal and state context; thus, we will address them together.Stallings at ¶ 11, citing State v. Williams,148 Ohio App.3d 473, 2002-Ohio-3777. Additionally, we construe Jim's Sales' void-for-vagueness argument as a challenge to the constitutionality of the ordinance as applied to its case. SeeOiler v. Ohio Bur. of Motor Vehicles (1996),109 Ohio App.3d 865, 867-68, citing Bd. of Educ. v. Kinney (1986),24 Ohio St.3d 184, and Maynard v. Cartwright (1988), 486 U.S. 356, 361,100 L.Ed.2d 372. See, also, United States v. Powell (1975),423 U.S. 87, 92-93, 46 L.Ed.2d 228 (vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis).
 {¶ 21} This Court has articulated the void-for-vagueness analysis as follows:
"Under the basic principles of due process, a statute is void for vagueness if its prohibitions are not clearly defined.Grayned v. Rockford (1972), 408 U.S. 104, 108, 33 L.Ed.2d 222. Further, a statute is void for vagueness if its terms invite arbitrary or discriminatory enforcement. Kolender v. Lawson
(1983), 461 U.S. 352, 357, 75 L.Ed.2d 903. However, a statute does not need to avoid all vagueness. See Grayned,408 U.S. at 110. As statutes are restricted to the use of words, there will always be uncertainties because we cannot expect strict certainty from our language. Id. Therefore, a statute will not be deemed void for vagueness if individuals of ordinary intelligence could comprehend it to the extent that it would fairly inform them as to the generally prohibited conduct. Broadrick v. Oklahoma
(1973), 413 U.S. 601, 607, 37 L.Ed.2d 830. The Ohio Supreme Court has specified that the void for vagueness doctrine implicates various values:
"`First, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure the fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited.' State v. Tanner (1984), 15 Ohio St.3d 1, 3.'" (Certain citations omitted.) Stallings at ¶ 12-13.
 {¶ 22} We are reminded that "the void-for-vagueness doctrine does not require statutes to be drafted with scientific precision." Perez v. Cleveland (1997), 78 Ohio St.3d 376, 378, citing State v. Anderson (1991), 57 Ohio St.3d 168, 174.
"The degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." Hoffman Estates v. The Flipside, HoffmanEstates, Inc. (1982), 455 U.S. 489, 498, 71 L.Ed.2d 362.
R.C. 4738.03(A) is a regulation of an economic and business activity. Therefore, it is subject to a lenient constitutional standard of review. See Oiler, 109 Ohio App.3d at 867.
 {¶ 23} First, Jim's challenges the provision in R.C. 4738.03
that requires that salvage dealers be primarily engaged in the sale of parts, asserting that the provision is too vague because it does not specify a measuring time for compliance. Jim's argues that sales figures vary constantly, and so a business may be in compliance one day but not the next. Jim's further argues that that selection of the one-year term commencing September 2002 was completely arbitrary.
 {¶ 24} The Board responds that because the provision requires a dealer to be "primarily" and not always engaged in the sale of parts, that the statute recognizes and allows for fluctuations in the business. Furthermore, the Board explains that by selecting a specific year-long time period, it was in fact attempting to establish a reasonable time for Jim's to establish its compliance, and that Jim's has not demonstrated how this time period was unreasonable. We find the Board's responses persuasive, and find that the requirement of R.C. 4738 is not vague.
 {¶ 25} Second, Jim's argues that the definition of "salvage motor vehicle" is not sufficiently definite. R.C. 4738.01(B) and Ohio Adm. Code 4501:1-4-01 define a "salvage motor vehicle" to mean "any motor vehicle which is in a wrecked, dismantled, or worn out condition, or unfit for operation as a motor vehicle." Jim's offers several examples of vehicles in various stages of disrepair or missing certain parts, and insists that the definition does not sufficiently explain to what extent a vehicle must be "dismantled" to constitute a series of parts rather than a salvage motor vehicle. However, we are reminded that statutes relating to the same general subject matter must be read in pari materia with the statute being construed. Bosher v. EuclidIncome Tax Bd. of Rev., 99 Ohio St.3d 330, 2003-Ohio-3886, at ¶14, citing United Tel. Co. of Ohio v. Limbach (1994),71 Ohio St.3d 369, 372.
 {¶ 26} The Board directs our attention to R.C. Chapter 4505 certificate of title provisions governing salvage vehicles, and specifically R.C. 4505.11, which, when read together with R.C. Chapter 4738, makes clear that a vehicle in temporary disrepair or disassembly, rendering it inoperable at the time, still remains a motor vehicle. In order to be a salvage motor vehicle, it must be in such a state that it must be virtually rebuilt, see R.C. 4505.11(E), or when it is determined "economically impractical to repair," R.C. 4505.11(C). See, also, State v.Finch (1998), 131 Ohio App.3d 571, 575, overruled on other grounds. Furthermore, before a vehicle can be sold as parts, the certificate of title must be surrendered to the clerk of court. R.C. 4505.11(A) (G). Jim's has admitted during the hearings that it transferred certificates of title to the purchaser when it sold an entire vehicle. Therefore, Jim's effected a sale of a vehicle. See R.C. 4505.04.
 {¶ 27} Finally, Jim's also challenges the meanings of "attempted sale" and "retail sale," arguing that a sale can occur at many points in time. R.C. 4738.01(F) defines a "retail sale" as "the act or attempted act of selling, bartering, exchanging, or otherwise disposing of salvage motor vehicles or salvage motor vehicle parts to an ultimate purchaser for use as a consumer." The Board reminds us that Jim's was not charged with an attempted sale, and so that portion of the argument is ultimately irrelevant. Moreover, it is well settled that a motor vehicle sale is effected by the transfer of title. R.C. 4505.04(A);Motorist Mutual Ins. Co. v. Auto Owners Mut. Ins. Co. (1956),103 Ohio App. 18, paragraph one of the syllabus.
 {¶ 28} Based upon the foregoing, we cannot find that any of Jim's Sales' challenges pose a successful vagueness argument. As such, we conclude that Jim's has failed to meet his burden of demonstrating that these provisions are unconstitutional as applied. See Simcox, at *11; Conley, 64 Ohio St.3d at 289. Jim's Sales' third assignment of error is overruled.
 D. Fourth Assignment of Error
"The trial court erred in failing to reverse the decision of the Ohio motor vehicle salvage dealer's licensing board because it failed to comply with the order of the fourth district court of appeals which required the board to give notice to Jim's Sales that it was required to physically break down vehicles before they are considered parts sales if the board first determined correctly that salvage motor vehicles could not be sold `for parts only.'"
 Fifth Assignment of Error
"The trial court erred in failing to reverse the decision of the Ohio motor vehicle salvage dealer's licensing board when the board vioalted the due process rights of Jim's Sales, inc. by failed [SIC] to give notice as required by the fourth district court of appeals."
 {¶ 29} In its fourth assignment of error, Jim's contends that the trial court failed to fulfill a notice requirement he asserts was mandated by the Fourth District Court of Appeals' decision inIn re Jack Fish Sons Co., Inc., 4th Dist. No. 01CA2812, 2002-Ohio-4222. In its fifth assignment of error, Jim's argues that this omission violated his due process rights. These contentions lack merit.
 {¶ 30} The Board argues that there is no evidence in the record that Jim's sold vehicles and recorded them as parts sales during the time period the Board was investigating. Jim's retorts that the Board is incorrect, pointing to statements made by the owner during the hearing that the business would occasionally sell vehicles for parts. Jim's summary of sales separated the sales into two categories, "sales" and "cars" and did not in any way reflect what portion of these sales included vehicles sold for parts. The testimony does not establish with any degree of certainty the number of vehicles that were sold in that state or that these sales even occurred during the timeframe in question. Therefore, assuming, without deciding, that the Fourth District case mandated a notice requirement that was binding on the Board, Jim's has failed to demonstrate that it applies to provide him with the relief that he seeks.
 {¶ 31} We do not reach Jim's constitutional due process argument because we have already disposed of the issue on other grounds. Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 105 ("[N]o constitutional question is ripe for judicial review `where the case can be disposed of upon other tenable grounds.'"), quoting Ireland v. Palestine,Braffetsville, N.P. N.W. Turnpike Co. (1869), 19 Ohio St. 369,373.
 {¶ 32} Jim's Sales' fourth and fifth assignments of error are overruled.
 E. Sixth Assignment of Error
"The trial court abused its discretion when it affirmed the adjudication of the Ohio motor vehicle salvage dealer's licensing board as that order was not supported by reliable, probative and substantial evidence and was not in accordance with law."
 {¶ 33} In its sixth assignment of error, Jim's Sales asserts that the trial court abused its discretion when it affirmed the adjudication order because the decision was not supported by reliable, probative, and substantial evidence and was not in accordance with law. We disagree.
 {¶ 34} Appeals taken from an administrative agency's decision are governed by R.C. 119.12. "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." Id. "The common pleas court must give due deference to the administrative resolution of evidentiary conflicts and must not substitute its judgment for that of the [Board]." (Quotations omitted.) N.R., Inc. v. Ohio LiquorControl Comm. (1996), 113 Ohio App.3d 198, 202. In addition, "courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession."Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, syllabus. However, "[t]o the extent that an agency's decision is based on construction of the state or federal Constitution, a statute, or case law, the common pleas court must undertake its R.C. 119.12 reviewing task completely independently." OhioHistorical Soc. v. State Emp. Relations Bd. (1993),66 Ohio St.3d 466, 471.
 {¶ 35} In reviewing a decision of a common pleas court that determines whether an agency's order is supported by reliable, probative and substantial evidence, this court must determine whether the trial court abused its discretion. Wise v. OhioMotor Vehicle Dealers Bd. (1995), 106 Ohio App.3d 562, 565. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [Board] or a trial court." Pons, 66 Ohio St.3d at 621. "On questions of law, the common pleas court does not exercise discretion and the court of appeal's review is plenary." McGee v. Ohio State Bd. ofPsychology (1993), 82 Ohio App.3d 301, 305. Thus, issues of law are reviewed de novo. Univ. Hosp., Univ. of Cincinnati Collegeof Medicine v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339, 343-344.
 {¶ 36} A violation of the provisions of R.C. Chapter 4738 provides grounds for the revocation of a salvage dealer's license. R.C. 4738.12 4738.07(B). In this case, the trial court affirmed the Board's order, which found that Jim's Sales was not operating primarily for the purpose of selling at retail salvage motor vehicle parts in violation of R.C. 4738.03(A).
 {¶ 37} R.C. 4738.03(A) proscribes a licensed motor vehicle salvage dealer from "engag[ing] in the business of selling at retail salvage motor vehicle parts or salvage motor vehicles, unless the business is operated primarily for the purpose of selling at retail salvage motor vehicle parts." This subsection does provide that a dealer may sell at retail salvage motor vehicles, but only secondarily to the sale of parts. Id. See, also, R.C. 4738.01(A) (`"Motor vehicle salvage dealer' means any person who engages in business primarily for the purpose of selling salvage motor vehicle parts and secondarily for the purpose of selling at retail salvage motor vehicles or manufacturing or selling a product of gradable scrap metal").
 {¶ 38} The Board elected to determine Jim's compliance from September 2002 to September 2003 by evaluating monthly sales of parts and vehicles, as prepared and offered by Jim's into evidence at the second hearing. The financial figures revealed that Jim's parts sales exceeded vehicle sales in only two out of 12 months during this time period. During the remaining months, vehicle sales accounted for more than the 50% of the sales; the percentages for these months ranged from 62% to 95%. Therefore, we find that the trial court did not abuse its discretion in concluding that the adjudication order was supported by reliable, probative and substantial evidence and was in accordance with law.
 {¶ 39} On the basis of the Fourth District Court of Appeals' analysis in Baughman v. Ohio Department of Public Safety MotorVehicle Salvage (1997), 118 Ohio App.3d 564, 574-75, Jim's argues that the Board both failed to consider and should have given more weight to the following circumstances, which he asserts contributed to his inability to sell more salvage parts than vehicles: (1) Jim's is located in a very small town that does not have a post office; (2) Jim's sells entire salvage vehicles for parts, in part because it is difficult for it to dismantle salvage vehicles after they are purchased; (3) in 1999-2000, Jim's owner was receiving treatment for cancer, which limited the business' ability to replenish its parts supplies; (4) in the winter of 2002, northern Ohio experienced heavy snowfall, which decreased the demand for vehicle parts; and (5) immediately prior to the first hearing in October 2003, Jim's came into statutory compliance.
 {¶ 40} The court in Baughman, upon applying the basic principles of legislative construction, first construed the term "primarily" to mean "principally" or "of first importance."118 Ohio App.3d at 574-75. The court went on to say, that, "in terms of numbers, `primarily' means a majority or a numerical plurality, id. at 575, but that "a numerical majority may not always control the determination, though, if it is outweighed by other facts and circumstances in the case." Id. Thus, the court read into the standard set forth in R.C. 4738.03(A) a consideration of the "totality of the circumstances," reasoning that it refused to read into the statute an exact standard because one had not been set forth by the legislature. Notably, the court did not explain what it meant by "other facts and circumstances" that would be relevant to the determination of whether a dealer was engaged primarily in the sales of parts. While one other court has discussed the Baughman
totality-of-the-circumstances analysis, that court ultimately relied upon the sales percentage and the business owner's own admission that the "main thrust" came from the sale of salvage motor vehicles. See Westward Auto, Inc. v. Ohio Motor VehicleSalvage Dealers Licensing Bd. (Jan. 18, 2000), 7th Dist. No. 98-CO-69, at *14-15.
 {¶ 41} While we can agree with the Fourth District's interpretation of this term to mean "of first importance," or a "numerical majority," introducing a "totality of the circumstances" analysis, we feel, borders on impermissible statutory interpretation. Although Jim's refuses to admit so, it is essentially asking this Court to read into the statute an allowance for mitigating circumstances. We reiterate that the statute simply requires that a dealer be "primarily" engaged in the sale of parts, and a plain reading of the term provides sufficient understanding of the legislature's intent. If the circumstances Jim's raises, regardless of their relevance, in fact had any impact on sales, that impact would be reflected in the numbers; and the numbers show us otherwise.
 {¶ 42} As for the argument that Jim's came into compliance right before the first hearing in October 2003, that fact is irrelevant because it does not concern the time frame the Board was investigating.
 {¶ 43} Jim's Sales' sixth assignment of error is overruled.
 F. Seventh Assignment of Error
"The trial court erred in failing to reverse the decision of the Ohio motor vehicle salvage dealer's licensing board when the board's investigation of Jim's Sales, Inc. did not comprt with R.C. § 4738.12 or O.A.C. § 4501:1-4-5 and, therefore, was improper, illegal and invalid."
 {¶ 44} In its seventh assignment of error, Jim's Sales contends that the trial court should have reversed the Board's adjudication order on the basis that the investigation was not commenced through proper procedure, i.e., through a motion or complaint. Jim's Sales' contention lacks merit.
 {¶ 45} "It is settled law that an appellate court must presume that the order of an administrative tribunal is valid and arrived at in the proper manner." Shumaker v. Ohio Dept. ofHuman Servs. (1996), 117 Ohio App.3d 730, 735. R.C. 4738.12
provides that the Board "may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee under this chapter." See, also, Ohio Adm. Code 4501:1-4-05 ("If such investigation discloses any such violations, such license holder shall be informed that reasonable grounds for suspension or revocation of the license exist."). It is undisputed that a verified complaint was not received by the Board in this case. Jim's argues that because the Board did not issue a "motion" or "notice" to the Ohio Bureau of Motor vehicles inspector that inspected Jim's Sales' property, that authorized an investigation, that the Board's investigation of the matter was not lawfully conducted.
 {¶ 46} Initially, we note that we are not aware of any legal authority that construes the phrase "upon its own motion" to require some sort of formal, written motion. Cf. State ex rel.Dumbar v. Ham (1976), 45 Ohio St.2d 112, 114. The provisions do not provide that the Bureau of Motor Vehicles' authority to inspect salvage dealers is contingent upon the Board's issuance of a "motion" or "notice," as Jim's appears to assert. See R.C.4738.10(B) (authorizing the Registrar to perform inspections for the Board); R.C. 4501.02(A) (stating, "[t]he registrar shall administer the laws of the state relative to * * * the licensing of * * * motor vehicle salvage dealers") The inspection was validly executed by the Bureau of Motor Vehicles in furtherance of the Board's power to ensure that salvage dealers are in compliance.
 {¶ 47} Jim's further argues that the notice provided to it stated that an investigation had been conducted by the Board, but that during the hearing the Board stated that an inspection rather than an investigation had occurred. However, Jim's does not demonstrate or establish that he would have presented a different defense or that he was ultimately prejudiced by the reference to an investigation by the Board rather than an inspection by the Bureau. See Angerman v. State Med. Bd.
(1990), 70 Ohio App.3d 346, 350.
 {¶ 48} The investigator that inspected Jim's Sales facility and paperwork, Matthew Haller, testified before the Board that he reviewed the business' paperwork, measured the property, and photographed the facility, in accordance with his standard procedure. During his inspection, he found violations. The notice of opportunity for hearing put Jim's on notice of the charges. Pursuant to its investigative authority, the Board conducted an independent review, and, after the taking of evidence and testimony, confirmed the Bureau's findings.
 {¶ 49} Therefore, we cannot find that the trial court erred in not reversing the adjudication order on this basis. Jim's Sales seventh assignment of error is overruled.
 III. {¶ 50} Jim's Sales' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Moore, J., concur.
[1] The investigator had also initially found that the facility violated the requirement in Ohio Adm. Code 4501:1-4-04(A) that a facility have a minimum area of 50,000 square feet. However, the facility was found to be in compliance with this requirement several days before the first administrative hearing was held.
[2] We note that Jim's Sales' brief does not conform to App.R. 16(A)(7) or Loc.R. 7(A)(7) requiring "each assignment of error shall be separately discussed."