DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, G.E.S., appeals from the order of the Summit County Court of Common Pleas, Juvenile Division, classifying him as a Tier III sexual offender and ordering him to comply with the various registration duties applicable to that classification. This Court affirms.
 I {¶ 2} G.E.S. was adjudicated a delinquent pursuant to his committing one count of sexual battery, as defined in R.C. 2907.03(A)(2), for conduct occurring on or about April 15, 2006. See In re G.E.S., 9th Dist. No. 23963, 2008-Ohio-2671 (affirming the lower court's adjudicatory disposition). On January 11, 2008, the trial court held a hearing on G.E.S.'s motion for judicial release and for the purpose of classifying G.E.S. as a sexual offender. G.E.S. filed a motion the morning of the hearing challenging the constitutionality of the newly enacted Adam Walsh Act ("AWA"). Without ruling on G.E.S.'s AWA challenge, the trial court granted *Page 2 
G.E.S.'s motion for judicial release, classified him as a Tier III Sex Offender, and further classified him as a juvenile offender registrant. See R.C. 2152.83(A) (ordering court to classify adjudicated delinquent as a juvenile offender registrant if the victim committed a sexually oriented offense on or after January 1, 2002, was sixteen or seventeen at the time of the offense, and not subject to mandatory juvenile offender registrant classification pursuant to R.C. 2152.82). The court also ordered that G.E.S. was not a public registry qualified juvenile offender registrant and would not be subject to AWA's community notification provisions.
 {¶ 3} On February 12, 2008, the trial court denied G.E.S.'s motion challenging AWA's constitutionality. On February 13, 2008, G.E.S. filed his notice of appeal in this Court. G.E.S.'s appeal as to his AWA classification is now before this Court and presents four assignments of error for our review. For ease of analysis, we rearrange several of the assignments of error.
 II Assignment of Error Number Two "THE TRIAL COURT ERRED TO THE PREJUDICE OF [G.E.S] BY APPLYING SENATE BILL 10, OHIO'S [AWA], OVER [G.E.S.]'S OBJECTIONS, AND CLASSIFYING [G.E.S] AS A TIER III SEX OFFENDER[.]"
 {¶ 4} In his second assignment of error, G.E.S. argues that the trial court erred in classifying him pursuant to AWA because AWA is unconstitutional. G.E.S. raises the following four specific challenges: (1) AWA violates Ohio's prohibition on retroactive laws pursuant to Art. II, Sec. 28 of the Ohio Constitution; (2) AWA constitutes an unconstitutional ex post facto law pursuant to Art. I, Sec. 10 of the U.S. Constitution; (3) AWA violates the separation of powers doctrine; and (4) AWA and R.C. 2152.01, et seq., are unconstitutionally vague.
 {¶ 5} Since legislative enactments enjoy a strong presumption of constitutionality, In re Farris (Oct. 18, 2000), 9th Dist. No. 20102, at *2, citing State v. Cook (1998), *Page 3 83 Ohio St.3d 404, 409, we cannot declare a statute unconstitutional until a challenging party demonstrates, beyond a reasonable doubt, that the statute and cited constitutional provisions are incompatible.Farris at *2, citing Cook, 83 Ohio St.3d at 409. We review such a constitutional challenge de novo. Medina v. Szwec, 9th Dist. Nos. 03CA0068-M, 03CA0070-M, 03CA0071-M 03CA0073-M, 2004-Ohio-2245, at ¶ 4.
Retroactive Clause Challenge {¶ 6} Recently, the Ohio Supreme Court noted that two provisions of Ohio law limit the retroactive application of statutes. Hyle v.Porter, 117 Ohio St.3d 165, 2008-Ohio-542, at ¶ 7. The first is that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48. The second is that "[t]he generally assembly shall have no power to pass retroactive laws[.]" Ohio Const., Art. II, Sec. 28. Thus, to determine whether a statute may apply retroactively, this Court must employ a two-part test. See Hyle
at ¶ 8, citing State v. Consilio, 114 Ohio St.3d 295, 2007-Ohio-4163, at ¶ 9-10. "[F]irst [we] ask whether the General Assembly expressly made the statute retroactive. If it did, then we determine whether the statutory restriction is substantive or remedial in nature." (Internal citation omitted.) Hyle at ¶ 8, citing Consilio at ¶ 10. A retroactive statute that attempts to impair a vested substantive right is unconstitutional. Consilio at ¶ 9. A retroactive statute will not violate the Retroactivity Clause, however, if it is "merely remedial in nature." Hyle at ¶ 7, citing Consilio at ¶ 9.
 {¶ 7} Based on our review of AW A, we conclude that the Legislature intended the statute to apply retroactively with regard to children adjudicated as delinquent. R.C. 2152.191 provides as follows:
 "If a child is adjudicated a delinquent child for committing a sexually oriented offense * * *, if the child is fourteen years of age or older at the time of committing the offense, and if the child committed the offense on or after January 1, 2002, both of the following apply: *Page 4 
"(A) Sections 2152.82 to 2152.86 and Chapter 2950. of the Revised Code apply to the child and the adjudication.
 "(B) In addition to any order of disposition it makes of the child under this chapter, the court may make any determination, adjudication, or order authorized under sections 2152.82 to 2152.86 and Chapter 2950. of the Revised Code and shall make any determination, adjudication, or order required under those sections and that chapter."
This language expressly makes AWA applicable to offenses committed before AWA's enactment on January 1, 2008.
 {¶ 8} Moreover, other provisions of AWA demonstrate the General Assembly's intention to apply the Act retroactively. For example, R.C. 2152.83(A)(1) permits a juvenile court to classify a child as a juvenile offender registrant and assign that child a sexual offender designation level either at the time of the child's disposition or at the time of the child's release from the department of youth services. When doing so the court must: 1) find that "[t]he act for which the child is orwas adjudicated * * * is a sexually oriented offense * * * committed on orafter January 1, 2002" (Emphasis added.) R.C. 2152.83(A)(1)(a), and 2) determine, after holding a hearing, whether the child is a Tier I, Tier II, or Tier III sex offender. R.C. 2152.83(A)(2) (including only the possibility of tier designations and not pre-AWA designations).
 {¶ 9} Accordingly, the current version of R.C. 2152.83(A)(1) applies to a child whose: (1) sexually oriented offense took place on or after January 1, 2002, but before AWA's enactment; (2) adjudication for the same also took place before AWA's enactment; and (3) whose classification did not take place until after AWA's effective date. AWA also applies to delinquent children, previously classified under pre-AWA law, who were confined in an institution of the department of youth services for a sexually oriented offense as of December 1, 2007. R.C. 2950.032 (The attorney general must reclassify confined delinquent children who *Page 5 
have previously been classified as juvenile offender registrants). In addition, "failure to comply with the registration and verification requirements constitutes a crime regardless of when the underlying offense was committed." (Emphasis added.) Cook, 83 Ohio St.3d at 410; R.C. 2950.06(G)(1); R.C. 2950.99. "Consequently, we find a clearly expressed legislative intent that R.C. Chapter 2950 be applied retrospectively." Cook, 83 Ohio St.3d at 410.
 {¶ 10} The next issue we must address is whether AW A, as it pertains to juveniles adjudicated as delinquent, is substantive or remedial in nature. See Hyle at ¶ 7. The retroactive application of a substantive statute offends the Ohio Constitution while the retroactive application of a remedial statute does not. Id. In Cook, the Ohio Supreme Court explained the distinction as follows:
 "A statute is `substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to a past transaction, or creates a new right. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right. A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively." (Internal citations omitted.) Cook, 83 Ohio St.3d at 411.
The Supreme Court analyzed the constitutionality of the former R.C. Chapter 2950 and determined that the registration and verification provisions of that Chapter were remedial in nature. Id. at 413. Consequently, in reviewing whether AWA is remedial or substantive in nature, we need only consider the new provisions that were absent from R.C. Chapter 2950 when the Supreme Court issued its decision inCook. Additionally, we need not address the community notification, victim notification, or public registry-qualified juvenile offender provisions of AWA as the juvenile court did not impose any of these upon G.E.S.
 {¶ 11} G.E.S. argues that AWA violates the Retroactivity Clause because it imposes an affirmative duty to register with the sheriff upon him; it imposes a felony as a penalty should he *Page 6 
fail to register with the sheriff every ninety days; and it stigmatizes him by requiring him to provide personal information such as an address, vehicle description, email address, and other items. We disagree.
 {¶ 12} As to G.E.S.'s arguments that AWA unconstitutionally imposes an affirmative duty to register with the sheriff upon him and a corresponding penalty for failure to do so, we find that the Supreme Court's decision in Cook resolves these issues. Both the duty to personally register and the corresponding penalty for failing to do so existed in pre-AWA Chapter 2950. In reviewing that law, the Supreme Court refused to hold that a change in the frequency or duration of a sex offender's reporting requirements transformed Chapter 2950 from a remedial statute to a substantive one. Cook, 83 Ohio St.3d at 412. Rather, the Court found that "the registration and address verification provisions of R.C. Chapter 2950 are de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950." Id. This was true even though pre-AWA law criminalized an offender's failure to comply with its registration and verification requirements. See id. at 410-12; former R.C. 2950.06(G)(1); former R.C. 2950.99.
 {¶ 13} G.E.S. fails to explain how the foregoing pre-AWA provisions differ from AWA's provisions such that Cook's logic no longer applies. See App. R. 16(A)(7). While the frequency and duration of AWA's registration and verification requirements are stricter than the prior law in certain instances, these requirements are still merely procedural at heart. See Cook, 83 Ohio St.3d at 411, citing Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 107-08 (noting that laws relating to procedures are generally remedial in nature despite the occasional substantive effect).
 {¶ 14} Since registration itself does not per se offend the Retroactivity Clause, we next consider whether the content of the required registration exceeds constitutional bounds. AWA *Page 7 
requires a sex offender to disclose more information than did pre-AWA law. Formerly, a delinquent child classified as a sexual predator had to give the sheriff a photograph and a signed form containing the following information: a current residence address; the name of any current employer, or future employer if known at the time of registration; the identification license plate number of each vehicle owned and any vehicle registered in the child's name; a statement that the child was adjudicated a sexual predator; and any other information required by the bureau of criminal identification and investigation. Former R.C. 2950.04.
 {¶ 15} Under AW A, a delinquent child classified as a Tier III offender must additionally provide: copies of travel and immigration documents; any aliases; the child's social security number, date of birth, and any alternate social security numbers or dates of birth; a statement that the child is in the custody of the department of youth services, if the child registers before his confinement; additional employment information such as the general area where the child is or will be employed; additional vehicle information such as any vehicles the child operates as part of his employment, any vehicles regularly available to him, a description of where each vehicle is "habitually parked, stored, docked, or otherwise kept[,]" and a photograph of each vehicle if the bureau of identification and investigation requires it; any commercial driver's license number or state identification card number; a DNA specimen, the name of the sexually oriented offense committed, and a certified copy of the text of that offense, if the child committed a sexually oriented offense in another state or court; each professional and occupational license, permit, or registration of the child; any email addresses, internet identifiers, or telephone numbers registered to or used by the child; and any other information required by the bureau of criminal identification and investigation. R.C. 2950.04. The child must also send a written notice of intent to reside in a county to the sheriff of that county no less than twenty days before the child *Page 8 
begins to reside there. R.C. 2950.04(G). This duty to report to the sheriff applies regardless of whether the court ordered the child to comply with the community notification provision embodied in R.C. 2950.11 (listing the persons and organizations that the sheriff must notify of an offender's presence including his name, address, and photograph). Under pre-AWA law, only children subject to community notification requirements had a duty to send notices of intent. Former R.C. 2950.04(G).
 {¶ 16} A remedial law may have some substantive effect without altering its overarching remedial purpose. Cook, 83 Ohio St.3d at 411, citing Van Fossen, 36 Ohio St.3d at 107-08. Accordingly, despite the notable increase in disclosures required by a child sex offender under AWA, we do not find that quantum increase unconstitutional. It does not change AWA from a remedial to a substantive law. It is significant to our analysis that the additional disclosures required by AWA enable law enforcement officials to protect the public without making such information public. See R.C. 2950.08; R.C. 2950.13 (requiring the attorney general to enter the child's information into a state registry, but restricting access to that registry to law enforcement officials and their representatives). AWA prohibits the bureau of criminal identification and investigation from posting what is arguably the most sensitive information, such as social security numbers, dates of birth, drivers license numbers, telephone numbers, and email addresses, on its public database. See R.C. 2950.13(A)(11). Moreover, none of the aforementioned information will be publicly disclosed if the child is not a public registry-qualified juvenile. R.C 2950.13(A)(11). To be a public registry-qualified juvenile, a child must have been previously adjudicated for a sexually oriented or child-victim oriented offense. R.C. 2152.82(A)(3). Thus, the Legislature restricted the public reporting requirements to juvenile *Page 9 
recidivists; those who arguably pose the greatest risk and about whom society has the greatest interest in obtaining information.
 {¶ 17} Moreover, in Cook, the Supreme Court noted the following:
 "[A]n allegation that government dissemination of information or government defamation has caused damage to reputation, even with all attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right; infringement of more `tangible interests' must be alleged as well. Further, [t]he harsh consequences [of] classification * * * come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the juvenile's] past actions." (Internal citations and quotations omittedj Cook, 83 Ohio St.3d at 413.
While we recognize that AWA has a significant impact upon the lives of sex offenders, that impact does not offend Ohio's prohibition on retroactive laws. Public safety is the driving force behind AWA. See R.C. 2950.02. We have no reason to doubt that the additional disclosures, uniformly required, properly assist government in its pursuit of public safety. As such, "[w]e cannot conclude that the Retroactivity Clause bans the compilation and dissemination of truthful information that will aid in public safety." Cook,83 Ohio St.3d at 413-14. G.E.S.'s challenge to AWA based on the Ohio Constitution's Retroactivity Clause lacks merit.
Ex Post Facto Challenge {¶ 18} Section 10, Article I of the U.S. Constitution prohibits the States from enacting any ex post facto laws. If a statute criminalizes an act that was innocent when performed or makes the punishment for that completed act more burdensome, then the statute is an unconstitutional ex post facto law. Cook, 83 Ohio St.3d at 414, quoting Beazell v.Ohio (1925), 269 U.S. 167, 169-70. To determine whether a statute constitutes an unconstitutional ex post facto law, a reviewing court must conduct a two-tiered analysis. Smith v. Doe (2003), 538 U.S. 84,92. First, the court must ask whether the legislature intended for the statute to be civil and non-punitive or criminal and punitive. Id. See, also, Cook, 83 Ohio St.3d at 415. The Ex Post *Page 10 
Facto Clause only prohibits criminal statutes and punitive schemes.Doe, 538 U.S. at 92. Thus, a determination that the legislature intended the statute to be punitive ends the analysis and results in a finding that the statute is unconstitutional. Id. If, however, the legislature intended for the statute to be civil and non-punitive, then the court must ask whether the statutory scheme is so punitive in nature that its purpose or effect negates the legislature's intent. U.S. v. Ward (1980),448 U.S. 242, 248-49. Accordingly, to withstand the Ex Post Facto Clause, a statute must be civil and non-punitive with regard to both the legislature's intent in enacting it and its actual effect upon enactment. See Doe, 538 U.S. at 92.
 {¶ 19} In assessing legislative intent, this Court first must look to see if the legislature "indicated either expressly or impliedly a preference for one label or the other." Id. at 93, quoting Hudson v.U.S. (1997), 522 U.S. 93, 99. The General Assembly did not include any reference to punishment in its public policy declaration. See R.C. 2950.02(A). R.C. 2950.02(A) simply discusses the importance of disseminating information to the public and to communities. AWA specifically provides the following with regard to the General Assembly's intent in enacting the statutory scheme:
 "[I]t is the general assembly's intent to protect the safety and general welfare of the people of this state. The general assembly further declares that it is the policy of this state to require the exchange in accordance with this chapter of relevant information about sex offenders and child-victim offenders among public agencies and officials and to authorize the release in accordance with this chapter of necessary and relevant information about sex offenders and child-victim offenders to members of the general public as a means of assuring public protection and that the exchange or release of that information is not punitive." R.C. 2950.02(B).
Accordingly, the legislature expressly indicated a preference for a civil and non-punitive statutory scheme. See Doe, 538 U.S. at 92. *Page 11 
 {¶ 20} G.E.S. argues that the legislature intended AWA to be punitive (despite the non-punitive language in R.C. 2950.02(B) quoted above) because: (1) the legislature placed AWA in the criminal Title of the Revised Code; (2) AWA criminalizes a sex offender's failure to register or verify the same; and (3) unlike pre-AWA law, AWA is not narrowly tailored to address a public concern. We disagree.
 {¶ 21} In Doe, the United States Supreme Court analyzed Alaska's Sex Offender Registration Act ("SORA"). The Alaska Legislature also placed SORA's registration provisions in the criminal procedure section of its code. Id. at 94. In determining that SORA's placement was not dispositive of the Alaska Legislature's intent, the Supreme Court noted that "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." Id. The Supreme Court further noted that Alaska's criminal procedure Title contained many provisions, which were unrelated to criminal punishment. Id. at 95 (describing laws in the criminal code that provided a procedure for the disposition of recovered and seized property, the protection of victims and witnesses, the governance of civil post-conviction actions, and other non-punitive provisions related to criminal administration).
 {¶ 22} Based on the Supreme Court's decision in Doe, we find that AWA's placement in Title 29 does not establish the legislature's intent to make AWA punitive. Title 29 also contains numerous provisions, which are unrelated to criminal punishment. See id; R.C. 2901.30 through R.C. 2901.42 (governing procedures regarding missing children and missing persons); R.C. 2953.02 (governing appeals and the finality of orders); R.C. 2930.11 (governing the treatment of a victim's property); R.C. 2953.71 through R.C. 2953.84 (governing DNA testing eligibility and procedure for inmates including laboratory selection, qualification, and preservation of samples); R.C. 2969.21 through R.C. 2969.27 (governing civil actions or appeals by inmates); and *Page 12 
R.C. 2981 (governing forfeiture of property, including civil forfeiture). Furthermore, we do not believe that AWA's placement negates the legislature's expressly indicated non-punitive intent. See R.C. 2950.02;Doe, 538 U.S. at 94 (indicating that statutory placement alone does not transform a civil remedy).
 {¶ 23} As to G.E.S.'s argument that AWA's criminalization of an offender's failure to register or verify his registration shows that AWA is punitive, we note that we have already determined that these provisions do not impact AWA's remedial nature. The pre-AWA statutory scheme also criminalized an offender's failure to comply with the registration and verification requirements. See former R.C. 2950.06(G)(1); former R.C. 2950.99. The Ohio Supreme Court specifically noted these provisions in its retroactivity discussion, but did not identify these provisions as presenting a problem in its Ex Post Facto analysis. See Cook, 83 Ohio St.3d at 410-17. See, also, Doe,538 Ohio St.3d at 101-02 (noting that criminal prosecution for failure to comply with SORA's reporting requirements is a proceeding separate from the individual's original offense). Furthermore, G.E.S. has not provided any law that demonstrates that AWA's penalties are more burdensome than the former penalties or make formerly innocent conduct criminal. SeeBeazell, 269 U.S. at 169-70. Thus, his argument with regard to AWA's penalty provisions lacks merit.
 {¶ 24} Lastly, G.E.S. argues that AWA demonstrates the legislature's punitive intent because, unlike pre-AWA law, AWA is not narrowly tailored. G.E.S. avers that the Supreme Court upheld the pre-AWA statutory scheme in Cook because pre-AWA's provisions were directly tied to an offender's ongoing threat in the community. He argues that AWA no longer embodies this narrow focus because it now applies classifications and registration requirements based solely on the underlying offense, rather than on a demonstrated risk of recidivism by a *Page 13 
particular offender and/or the potential risk to a specific community — each of which might be alleviated by public notice of the offender's presence. Such an argument assumes, incorrectly, that the potential for recidivism and/or the effectiveness of public notice are the only legitimate non-punitive rationales for classification and registration requirements. We reject that analysis, first because of the inherent difficulty in predicting recidivism in a particular offender[1] and second because notice depends upon knowledge of the offender's presence in a given community. History teaches us that predictions of recidivism are not sufficiently reliable and that discovery of an offender's presence in a community often comes tragically too late. AWA's provisions are directly related to the second problem and seek to enhance law enforcements' awareness of the presence of potential offenders. The utility of such knowledge is obvious and its use during a particular criminal investigation is no more suspect than use of the many data base resources presently available to law enforcement. While the enhancements in AWA cannot guarantee that sexual offenders will be identified before committing another offense, or caught thereafter, such enhancements have a rational and sufficient nexus to community safety and the public good.
 {¶ 25} The Ohio Supreme Court has concluded that the General Assembly's intent when *Page 14 
enacting the pre-AWA statutory scheme was non-punitive as "evidenced by the General Assembly's narrowly tailored attack on this problem."Cook, 83 Ohio St.3d at 417. The Court specifically noted that pre-AWA notification provisions only applied automatically to sexual predators and that its registration provisions only sought to distribute information to those "most likely to be potential victims." Id. Our review of AWA as it applies to juveniles adjudicated as delinquents for sexually oriented offenses leads us to conclude that the General Assembly drafted AWA with a rational nexus to known deficiencies in the existing statutory framework and in a way that further enhances public safety.
 {¶ 26} Under AWA, delinquent children receive multiple opportunities for reclassification. A delinquent child's classification must be reassessed upon the completion of his disposition. R.C. 2152.84(A)(1). Furthermore, the delinquent child may petition the court for a mandatory hearing to reassess his classification after the passage of a designated number of years. R.C. 2152.85(A)-(B). If a court classifies a delinquent child as a Tier III offender, the court has discretion whether to impose victim and community notification provisions. R.C. 2152.83(C)(2). Moreover, delinquent children are only required to register their information on a public database if a court determines that they are public registry-qualified juveniles. R.C. 2950.13(A)(11). A public-registry qualified designation means that the juvenile has at least one prior sexually oriented or child-victim oriented offense. R.C. 2152.82(A). Thus, the legislature limited public registration to juvenile recidivists. We conclude that the legislature crafted AWA's enhancements narrowly when adding to the former statutory scheme. Accordingly, G.E.S.'s argument lacks merit, and we find that the legislature intended for AWA to be a civil, non-punitive scheme. SeeDoe, 538 U.S. at 92. *Page 15 
 {¶ 27} We next must consider whether AWA has a punitive effect such that its effect negates the legislature's intent. Id. "Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." (Internal quotations omitted). Id., quoting Hudson, 522 U.S. at 100, quotingWard, 448 U.S. at 249. Since the determination of "whether a retroactive statute is so punitive as to violate the constitutional prohibition against ex post facto laws is a `matter of degree'[,]" the United States Supreme Court has "fashioned useful guideposts for determining whether a statute is punitive." Cook, 83 Ohio St.3d at 418, citing Kennedy v.Mendoza-Martinez (1963), 372 U.S. 144. The guideposts are as follows:
 "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]" (Footnotes omitted.) Kennedy, 372 U.S. at 168-69.
While useful, the Mendoza-Martinez factors are "neither exhaustive nor dispositive[.]" Doe, 538 U.S. at 97, quoting Ward, 448 U.S. at 249.
 {¶ 28} G.E.S. argues that AWA subjects him to unreasonable public shame and humiliation and places significant restraints on his liberty. He argues that AWA's "obligations and burdens" apply regardless of whether they are necessary and impose "substantial and intrusive registration requirements" that were not in effect at the time that he committed his crime. Accordingly, he argues that the overall effect of AWA transforms the statutory scheme into a punitive, rather than a non-punitive one. We disagree.
 {¶ 29} In assessing the affirmative disability or restraint factor found in Kennedy, the United States Supreme Court determined that while an offender's underlying conviction might *Page 16 
impose certain disabilities upon him, SORA's provisions did not.Doe, 538 Ohio St.3d at 100-02. The Supreme Court reasoned that while SORA required offenders to notify authorities if they changed address, place of employment, or physical appearance, the statute did not require offenders "to seek permission to do so." Id. at 101. Offenders were free to make these changes so long as they forewarned authorities. Id. While the Supreme Court did not have to consider the matter of in-person registration, as SORA contained no such requirement, the Ohio Supreme Court upheld the pre-AWA statutory scheme's in-person registration requirements in Cook. Cook, 83 Ohio St.3d at 418. The Court found that "[t]he act of registering does not restrain the offender in any way. Registering may cause some inconvenience[, but] * * * the inconvenience is comparable to renewing a driver's license." Id.
 {¶ 30} As with the statutory schemes in Doe and Cook, AWA does not impose any unconstitutional disabilities or restraints upon delinquent children who are classified as sexually oriented offenders. Delinquent children must provide and continually update certain required information, but AWA does not restrain them or otherwise forbid them from engaging in activities. Certainly, delinquent children may feel humiliated or ostracized as a result of AWA's reporting requirements, but freedom from humiliation and other disagreeable consequences is not a constitutional right. Such humiliation or ostracism may flow naturally from an underlying conviction (including convictions for non-sexually oriented offenses) regardless of AWA's applicability. We do not ignore the potential impact of AWA, but "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the sting of punishment." (Internal quotations omitted.) Id., quoting Dept. of Revenue of Montana v. Kurth Ranch
(1994), 511 U.S. 767, 777, fn. 14, quoting U.S. v. Halper (1989),490 U.S. 435, 447, overruled on other grounds, Hudson v. U.S. (1989),490 U.S. 435, *Page 17 
440. Consequently, we cannot find that this factor weighs in favor of AWA having a punitive effect.
 {¶ 31} When reviewing the historical nature of pre-AWA law, the Ohio Supreme Court noted that "[r]egistration has long been a valid regulatory technique with a remedial purpose." Cook,83 Ohio St.3d at 418. The Court further noted that historically the "`dissemination of such information in and of itself * * * has never been regarded as punishment when done in furtherance of a legitimate governmental interest.'" Id. at 419, quoting E.B. v. Verniero (C.A.3, 1997),119 F.3d 1077, 1099-1100. The United States Supreme Court echoed this logic inDoe. Doe, 538 U.S. at 98 ("Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment."). Doe rejected the argument that SORA's registration and notification provisions resembled traditional colonial shaming punishments, which were publicly displayed for the purpose of ridiculing the offender rather than informing the public. Id. at 98-99. The Supreme Court noted that not even SORA's Internet notification provision supported the contention that SORA unconstitutionally subjected offenders to public shaming. Id. at 99. While the "Internet is greater than anything which could have been designed in colonial times[,] * * * [t]he purpose and the principal effect of notification are * * * not to humiliate the offender." Id. "Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of valid regulation." Id.
 {¶ 32} We do not find that AWA's provisions vary so greatly from those in Cook and Doe that the provisions would have been historically regarded as criminal punishment. See Kennedy, 372 U.S. at 168-69. As previously discussed, AWA does not require that all juvenile sexual offenders comply with its registration and notification provisions. AWA does not permit or mandate that all private information be publicly available. Moreover, there is no evidence that *Page 18 
had modern information technologies and communications been available to our ancestors, the use of such media would have been considered punitive as opposed to informative and necessary for public safety. SeeDoe, 538 U.S. at 99 (noting that SORA's web site did not allow the public to post comments about offenders or otherwise give the public a mechanism to shame them). Consequently, this Mendoza-Martinez factor weighs in favor of AW A having a non-punitive effect.
 {¶ 33} As to whether AWA requires a finding of scienter, we find that the result in Cook controls our analysis. In Cook, the Ohio Supreme Court held the following:
 "There is no scienter requirement indicated in R.C. 2950.04. The General Assembly requires that [delinquent children] `shall register' pursuant to R.C. 2950.04(A). The act of failing to register alone, without more, is sufficient to trigger criminal punishment provided in R.C. 2950.99. Accordingly, we find that R.C. 2950.04
does not require scienter." Cook, 83 Ohio St.3d at 419-20.
AWA also lacks a scienter requirement and imposes a criminal punishment merely upon a delinquent child's failure to register. R.C. 2950.04(A); R.C. 2950.99. Accordingly, this Mendoza-Martinez factor weighs in favor of AWA having a non-punitive effect.
 {¶ 34} Cook also controls our determination of the fifthMendoza-Martinez factor regarding whether the targeted behavior was already a crime under the former law. Cook provides as follows:
 "Even prior to the promulgation of the current version of R.C. Chapter 2950, failure to register was a punishable offense. Thus, any such punishment flows from a failure to register, a new violation of the statute, not from a past sex offense. In other words, the punishment is not applied retroactively for an act that was committed previously, but for a violation of law committed subsequent to the enactment of the law." (Internal citations omitted.) Cook, 83 Ohio St.3d at 420-21.
As in Cook, the pre-AWA scheme made failing to register a punishable offense. "Accordingly, the behavior to which R.C. Chapter 2950 applies is already a crime." Id. at 421. *Page 19 
 {¶ 35} We next consider whether AWA promotes the traditional aims of punishment-retribution and deterrence. See Kennedy, 372 U.S. at 168-69. "Any number of governmental programs might deter crime without imposing punishment." Doe, 538 U.S. at 102. Furthermore, "even if one assumes that [a statute] would have some deterrent effect, deterrence alone is insufficient to make a statute punitive." Cook, 83 Ohio St.3d at 420. In applying these principles, the Ohio Supreme Court refused to find that the pre-AWA statutory scheme promoted traditional aims of punishment and deterrence. The scheme was not retributive in nature because it required offenders to comply for informational purposes, not merely to "seek vengeance for vengeance's sake[.]" Id. Furthermore, the Court doubted that the scheme had a deterrent effect because "[a]rguably, sexual predators are not deterred even by the threat of incarceration." Id. Our review of AWA convinces us that Cook applies to the vast majority of its provisions, which are targeted to maximize the flow of information to the public. AWA attempts to "solve a problem" by keeping the public well informed of possible sources of danger. See id. at 420, quotingArtway v. New Jersey Atty. Gen. (C.A.3, 1996), 81 F.3d 1235, 1255. We cannot say that any of the additions to the pre-AWA statutory scheme, which are comprised mainly of additional demands for information from offenders, transform the scheme into one that has either a noticeable retributive or deterrent effect.
 {¶ 36} G.E.S. argues to the contrary and asserts that AWA is punitive because it classifies offenders by offense rather than likelihood to reoffend. Initially, we note that the United States Supreme Court considered this same issue in Doe. SORA also classified offenders by offense "without regard to their future dangerousness." Doe,538 U.S. at 103. In upholding this structuring, the Supreme Court said:
 "The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular *Page 20 
regulatory consequences. * * * The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause." Id. at 103-04.
 {¶ 37} Moreover, G.E.S. misinterprets AWA. AWA vests a juvenile court with full discretion to determine whether to classify a delinquent child as a Tier I, Tier II, or Tier III offender. See R.C. 2950.01(E)-(G). R.C. 2950.01(E) defines a "Tier I sex offender" as one of the following:
 "(3) A sex offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any sexually oriented offense and who a juvenile court, pursuant to section 2152.82, 2152.83, 2152.84, or 2152.85 of the Revised Code, classifies a tier I sex offender/child-victim offender relative to the offense." (Emphasis added.)
R.C. 2950.01(F) and R.C. 2950.01(G) contain the identical provision with the exception of substituting the terms "Tier II sex offender" and "Tier III sex offender" for the references to "Tier I sex offender." None of the other provisions in R.C. 2950.01(E) through R.C. 2950.01(G), which define the Tier I, Tier II, and Tier III categories for adult offenders, depend on a court classifying an offender relative to any sexually oriented offense. The adult provisions define AWA's Tier levels solely by offense, such that the commission of one of the listed offenses results in a mandatory imposition of the applicable Tier level for that offense. Thus, our reading of AWA convinces us that the legislature intended to give juvenile courts the discretion to determine which Tier level to assign to a delinquent child, regardless of the sexually oriented offense that the child committed. AWA does not forbid a juvenile court from taking into consideration multiple factors, including a reduced likelihood of recidivism, when classifying a *Page 21 
delinquent child. Accordingly, G.E.S.'s argument that in his case AWA is punitive because it imposes classifications without regard to potential recidivism lacks merit.[2]
 {¶ 38} The next consideration is whether AWA serves any alternate non-punitive purpose. See Kennedy, 372 U.S. at 168-69. The Ohio Supreme Court determined in Cook that public safety is a permissible alternate purpose. Cook, 83 Ohio St.3d at 421. The Court held that "protection of the public is a paramount governmental function enforced through the police power * * * [and that] [t]he fact that released sex offenders have a high rate of recidivism demands that steps be taken to protect members of the public against those most likely to reoffend." Id. WhileCook analyzed public safety in the context of a "high rate of recidivism," it does not necessarily follow that public safety is an impermissible purpose absent evidence of recidivism. Before the enactment of AWA, the Ohio Supreme Court favored presentation of expert testimony on the statutory requirement regarding the likelihood of recidivism. See State v. Eppinger (2001), 91 Ohio St.3d 158, 163. However, reliable expert testimony meeting the criteria ofDaubert remains an elusive, and we suggest a costly, goal.[3] The General Assembly has, in AWA, abandoned that laudable, but not yet attainable requirement for adult sexual offenders. Yet, with regard to juvenile offenders AWA permits consideration of recidivism in addition to the alternate remedial purpose of public safety. Moreover, in our view, AWA *Page 22 
improves public safety by giving law enforcement additional timely information which is updated for a longer period of time. Accordingly, public safety weighs in favor of AWA having a non-punitive intent and non-punitive effect. See Doe, 538 U.S. at 92.
 {¶ 39} The last Mendoza-Martinez factor questions the excessiveness of the statutory scheme at issue in light of its alternate purpose.Kennedy, 372 U.S. at 168-69. In upholding the pre-AWA statutory scheme, the Ohio Supreme Court focused on the scheme's narrowness.Cook, 83 Ohio St.3d at 421-23. The Court reasoned that the scheme imposed the harshest registration and notification requirements upon the most probable recidivists and placed the vast majority of information solely in the hands of law enforcement officials. Id. at 421-22. Further, the Court noted that the scheme provided a mechanism for offenders to submit evidence and petition to have their classification label and its obligations removed. Id. The Court thus concluded that the pre-AWA statutory scheme was not excessive in light of its protective purpose. Id. at 423.
 {¶ 40} With regard to delinquent children adjudicated as sexually oriented offenders, AWA shares many of the same attributes as the pre-AWA statutory scheme. As previously noted, juvenile courts have the discretion to determine which Tier classification should apply to delinquent children and may account for factors such as dangerousness in their classifications. See R.C. 2950.01(E)-(G). Delinquent children also have multiple opportunities to challenge their classifications and to request that the court either assign them a new Tier level or remove their sex offender label entirely. See R.C. 2152.84; R.C. 2152.85. Although AWA requires delinquent children to submit more personal information in order to comply with registration requirements, the public has limited access to this information. See R.C. 2950.13. Furthermore, none of the delinquent child's information will be publicly available unless the juvenile court *Page 23 
first determines that the child is a public registry-qualified juvenile. See R.C. 2152.13(A)(11); R.C. 2152.82 (defining public registry-qualified juvenile). Based on our review of the applicable portions of AW A, we cannot conclude that its provisions extend past those "reasonably necessary for the intended purpose of protecting the public." Cook, 83 Ohio St.3d at 423. Accordingly, we hold that AWA is not excessive with regard to its alternate purpose. SeeKennedy, 372 U.S. at 168-69.
 {¶ 41} In sum, this Court finds that AWA does not have an unconstitutional punitive intent/purpose or effect with respect to delinquent children adjudicated as sexually oriented offenders. SeeDoe, 538 U.S. at 92 (noting that to comport with the Ex Post Facto Clause, a retroactive statutory scheme must be civil and non-punitive in light of both the legislature's intent in enacting it and its effect upon enactment). G.E.S.'s argument that AWA violates the Ex Post Facto Clause lacks merit.
Separation of Powers Challenge {¶ 42} G.E.S. argues that AWA violates the separation of powers doctrine and "unconstitutionally strip[s]" the judiciary of its discretion because it classifies delinquent children based solely on their offenses. He argues that AWA essentially gives the legislature the power to classify delinquent children because the Act removes the judiciary's authority to consider any factors other than the delinquent child's offense when conducting a classification. We have already determined, however, that AWA gives juvenile courts full discretion in determining what Tier level to assign delinquent children and does not prohibit those courts from considering the likelihood of the child to reoffend or any other relevant factor. See R.C. 2950.01(E)-(G). Moreover, AWA vests the juvenile court with the discretion to decide whether *Page 24 
the juvenile should be subject to the Act's community and victim notification provisions. See R.C. 2152.83(C)(2). Consequently, G.E.S.'s separation of powers argument is overruled.
Void-for-Vagueness Challenge {¶ 43} To prove that a statute is unconstitutionally vague, a party must demonstrate that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." State v. Schneider, 9th Dist. No. 06CA0072-M, 2007-Ohio-2553, at ¶ 6, quoting Coates v.Cincinnati (1971), 402 U.S. 611, 614. The challenger bears the burden of showing that upon examination of the statute a person of ordinary intelligence would be unable to understand what the law requires of him.Schneider at ¶ 6, citing State v. Anderson (1991), 57 Ohio St.3d 168,171.
 {¶ 44} G.E.S. argues that AWA and R.C. 2152.01, et seq. are unconstitutionally vague on their face and as applied. He argues that a reasonable person would not understand what criteria AWA employs for determining Tier classifications. In making this argument, G.E.S. concedes that AWA gives a juvenile court the discretion to choose the Tier level that will apply to a delinquent child. Thus, he argues, a delinquent child has no forewarning as to which Tier level a juvenile court will select or what criteria the court will employ in its selection.
 {¶ 45} We agree with G.E.S. that AWA does not contain an express list of factors that the juvenile court must consider in classifying a delinquent child. We also agree that AWA gives juvenile courts a wide range of discretion in choosing which classification level to assign to delinquent children. We do not agree, however, that these truisms make AWA unconstitutionally vague. Although a juvenile court has the discretion to choose which classification applies to a delinquent child, the court's decision still must be based on some *Page 25 
competent, credible evidence. See State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, syllabus. Discretion does not equate to arbitrariness. See In re Jim's Sales, Inc., 9th Dist. No. 04CA008601, 2005-Ohio-4086, at ¶ 21, quoting State v. Stallings, 9th Dist. No. 20987, 2002-Ohio-5942, at ¶ 12-13. While AWA no longer sets forth an explicit set of guidelines for the juvenile court to employ in its classification analysis, AWA is not completely devoid of such guidance.
 {¶ 46} Tier level designations for adult offenders are strictly, and clearly, broken down by category of offense. See R.C. 2950.01(E)-(G). The more egregious an offense, the higher the Tier level designation. See id. For instance, while gross sexual imposition as to an adult victim is a Tier I sex offense, gross sexual imposition of a victim under the age of thirteen is a Tier II sex offense. R.C. 2950.01(E)(1)(c); R.C. 2950.01(F)(1)(c). Similarly, while kidnapping with sexual motivation of an adult victim is a Tier II sex offense, kidnapping with sexual motivation of a minor is a Tier III sex offense. R.C. 2950.01(F)(1)(e); R.C. 2950.01(G)(1)(e). AWA reserves the Tier III sex offense designation for the most egregious offenses. See 2950.01(G) (defining a Tier III sex offender as one who commits an offense such as rape, sexual battery, aggravated and non-aggravated murder with sexual motivation, and the like). While AWA does not mandate the application of these offense categories to juveniles, such provisions provide guidance to juvenile courts. Logic dictates that the egregiousness of a delinquent child's offense should play a role in the classification that he or she receives because children who commit the most egregious offenses are arguably those most likely to pose the greatest future risk to the public. Similarly, logic dictates that the number of sex offenses that a delinquent child has committed should play a large role in the court's classification decision. See R.C. 2950.01(F)(1)(i) (imposing a Tier II designation upon any adult offender who commits a sex *Page 26 
offense after previously having been classified as a Tier I sex offender); R.C. 2950.01(G)(1)(i) (imposing a Tier III designation upon any adult offender who commits a sex offense after previously having been classified as a Tier II sex offender). The court is directed to consider whether the child has received any treatment as a consequence of the offense, R.C. 2152.84(A), and is permitted to consider the likelihood that the child might re-offend.
 {¶ 47} G.E.S. criticizes AWA on the one hand for being too dogmatic and on the other for not being rigid enough. We reject such a polarized analysis. AWA properly endorses flexibility, an approach more suitable to rehabilitation of a delinquent child and one not inconsistent with protection of the public. See R.C. 2152.01(A). We decline to create an exhaustive list of factors that a juvenile court must consider when classifying a delinquent child. Moreover, we do not believe that a person of ordinary intelligence would be unable to understand the law or the parameters of the classification that G.E.S. might face as a result of his actions. See Schneider at ¶ 6. G.E.S.'s argument that the statutory scheme is unconstitutionally vague lacks merit.
 {¶ 48} We reject G.E.S.'s constitutional challenges and find that the juvenile court did not err in classifying G.E.S. as a Tier III sexually oriented offender for the offense of sexual battery under the circumstance more fully set forth in In re G.E.S., 9th Dist. No. 23963,2008 Ohio-2671. Consequently, G.E.S.'s second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT ERRED TO THE PREJUDICE OF [G.E.S] BY OVERRULING [G.E.S.]'S MOTION TO FIND AMENDMENT TO ORC SECTIONS 2152.01, ET SEQ. AND 2950.01, ET SEQ. UNCONSTITUTIONAL[.]"
 {¶ 49} In his third assignment of error, G.E.S. argues that the trial court erred in denying his oral objection and written motion based on the unconstitutionality of AWA. As we have *Page 27 
already determined that AWA, as it applies to juveniles such as G.E.S., is not unconstitutional, this assignment of error is moot and we decline to address it. See App. R. 12(A)(1)(c).
 Assignment of Error Number One "THE TRIAL COURT ERRED BY CLASSIFYING [G.E.S.] AS A TIER III SEX OFFENDER PURSUANT TO OHIO'S [AWA] AND ORDERING HIM TO COMPLY WITH REGISTRATION DUTIES PURSUANT TO R.C. 2950.041, 2950.05 AND 2950.06[.]"
 {¶ 50} In his first assignment of error, G.E.S. argues that the trial court erred in ordering him to comply with the registration duties contained in R.C. 2950.041, R.C. 2950.05, and R.C. 2950.06. Specifically, G.E.S. argues that: (1) R.C. 2950.041 does not apply to him because he is not a "child-victim offender;" (2) because R.C. 2950.05 and R.C. 2950.06 depend upon R.C. 2950.041's application, the trial court erred in ordering him to comply with those sections as well; and (3) even if the court ordered him to register as a "sex offender" pursuant to R.C. 2950.04, the legislature failed to make that statute retroactive.
 {¶ 51} The term "sex offender" applies to a child whom the court has adjudicated delinquent for committing a sexually oriented offense. R.C. 2950.01(B)(1). A "sexually oriented offense" includes sexual battery pursuant to R.C. 2907.03. R.C. 2950.01(A)(1). To be termed a "child-victim offender," a child must have committed a child-victim oriented offense. R.C. 2950.01(D). A child commits a "child-victim oriented offense" when he engages in an act that constitutes a violation of a specified kidnapping offense, or its substantial equivalent, and the victim was under eighteen years of age. R.C. 2950.01(C).
 {¶ 52} If the juvenile court commits a delinquent child to a secure facility without classifying the child, then at the time of the child's release the court shall issue "an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply *Page 28 
with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code" if the three following items apply:
 "(a) The act for which the child * * * was adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002[;]
 "(b) The child was sixteen or seventeen years of age at the time of committing the offense[;]
 "(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code[.]" R.C. 2152.83(A)(1).[4]
R.C. 2950.04 governs the registration requirements for sexually oriented offenses. R.C. 2950.041 governs the registration requirements for child-victim oriented offenses. By definition, a single offense cannot be both a sexually oriented offense and a child-victim oriented offense. See R.C. 2950.01.
 {¶ 53} G.E.S.'s delinquency adjudication pertained to his committing sexual battery, a sexually oriented offense. See R.C. 2950.01(A)(1). By statutory definition, G.E.S. could only be classified as a sex offender. See R.C. 2950.01(B)(1). Furthermore, the record reflects, and G.E.S. does not dispute, that all three statutory subsections of R.C. 2152.83(A)(1) applied to G.E.S. at the time of his classification. See R.C. 2152.83(A)(1) (applying to a child adjudicated as a delinquent, but not classified as a juvenile offender registrant, who was sixteen or seventeen when he committed a sexually oriented offense on or before January 1, 2002). Once the trial court determined that these subsections applied to G.E.S., the trial court was required to enter an order specifying that G.E.S. had "a duty to comply with sections 2950.04,2950.041, 2950.05, and 2950.06 of the Revised Code." R.C. 2152.83(A)(1). *Page 29 
 {¶ 54} At G.E.S.'s classification hearing, the trial court indicated that it was ordering G.E.S. to "comply with the registration duties imposed upon him by the Revised Code, specifically 2950.04, 2950.041, 2950.05, and 2950.06."[5] The court, however, specifically classified G.E.S. as a sex offender. The court never referred to G.E.S. as a child-victim offender, or to his crime as a "child-victim oriented offense." Furthermore, the court's January 14, 2008 journal entry provides that G.E.S. was "adjudicated delinquent for having committed asexually oriented offense" (Emphasis added.). Because R.C. 2950.01(A)(1) defines sexual battery as a sexually oriented offense, the trial court properly classified G.E.S. as a sex offender and ordered him to comply with the registration requirements applicable to that classification and contained in R.C. 2950.04, R.C. 2950.05, and R.C. 2950.06. The trial court also apparently included R.C. 2950.041 in its order because R.C. 2152.83(A)(1) mandates the inclusion of both R.C. 2950.04 and R.C. 2950.041. We are perplexed by this mandatory inclusion because, by definition, a child who only commits one offense, designated as either a sexually oriented offense or a child-victim oriented offense, will be subject only to the registration requirements that govern that offense. See R.C. 2950.04 (containing registration requirements for sexually oriented offenses); R.C. 2950.041 (containing registration requirements for child-victim oriented offenses). Even so, we decline to address the issue on the merits because G.E.S. failed to object to the trial court's inclusion of both R.C. 2950.04 and R.C. 2950.041 below and has failed to assert plain error on appeal. See State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, at ¶ 23 (holding that a party forfeits an issue for appeal and limits an appellate court's review to that of plain error when he fails to contemporaneously object to the error in the trial court); Crim. R. 52(B); State v. *Page 30 Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 11 (providing that this Court will not sua sponte undertake a plain error analysis).
 {¶ 55} Next, G.E.S. argues that R.C. 2950.05 and R.C. 2950.06 cannot apply to him through R.C. 2950.04 because the Legislature failed to make specific portions of R.C. 2950.04 retroactive. We have already determined, however, that Chapter 2950 of the Revised Code applies retroactively to G.E.S. Consequently, this argument lacks merit. G.E.S.'s first assignment of error is overruled.
 Assignment of Error Number Four "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT CLASSIFIED [G.E.S] PURSUANT TO OHIO'S AWA AND ORDERED HIM TO COMPLY WITH THE REPORTING REQUIREMENTS SET FORTH THEREIN BECAUSE APPLYING OHIO'S AWA TO A JUVENILE ADJUDICATED DELINQUENT FOR COMMITTING A SEXUALLY ORIENTED OFFENSE VIOLATES THE JUVENILE'S RIGHT TO EQUAL PROTECTION OF THE LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 2, ARTICLE I OF THE OHIO CONSTITUTION[.]"
 {¶ 56} In his final assignment of error, G.E.S. argues that the trial court committed plain error in classifying him as a Tier III sex offender because AWA violates the equal protection clause. Specifically, he argues that AWA subjects him to the same reporting requirements and penalties for failing to comply with those reporting requirements as an adult without affording him the same due process rights, such as a jury trial on his underlying offense. We disagree.
 {¶ 57} G.E.S. concedes that his counsel failed to raise this argument in the trial court. Accordingly, he relies on the doctrine of plain error to assert this argument on appeal. For plain error to exist, "`(1) there must be an error, i.e., a deviation from a legal rule, (2) the error must be plain, which means that it must be an obvious defect in the trial proceedings, and (3) the error must have affected substantial rights, which means that the trial court's error must have affected *Page 31 
the outcome of the trial.'" (Internal quotations omitted.) In reJ.P.-M., 9th Dist. Nos. 23694 23714, 2007-Ohio-5412, at ¶ 57, quotingState v. Gross, 97 Ohio St.3d 121, 134, 2002-Ohio-5524, at ¶ 45, quotingState v. Barnes (2002), 94 Ohio St.3d 21, 27.
 {¶ 58} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that no state shall deny to any person the equal protection of the laws. It prevents a state from treating people differently under its laws on an arbitrary basis. Harper v.Virginia State Bd. of Elections (1966), 383 U.S. 663, 681 (Harlan, J., dissenting). An equal protection claim arises, therefore, only in the context of an unconstitutional classification made by a state, i.e., when similarly situated individuals are treated differently. SeeConley v. Shearer (1992), 64 Ohio St.3d 284, 288-289. Accordingly, a law that operates identically on all people under like circumstances will not give rise to an equal protection violation. Id. at 290.
 {¶ 59} Contrary to G.E.S.'s assertion, AWA does not subject him to the same requirements as an adult offender classified as a Tier III sexually oriented offender. As previously noted, AWA gives juvenile courts discretion over whether to apply a Tier III classification to an offender such as G.E.S. A trial court would have no choice, however, to impose a Tier III classification upon an adult offender who committed the same crime. See R.C. 2950.01(G)(1)(a). The trial court also declined to impose a community notification requirement upon G.E.S.; a notification that an adult offender would be automatically ordered to comply with. See R.C. 2152.83(C)(2); R.C. 2950.11. Finally, G.E.S. need not have his personal information displayed on AWA's public registry because he did not qualify as a public registry-qualified juvenile. See R.C. 2152.82(A). A Tier III sexually oriented adult offender will automatically have the required personal information posted on the Internet purely as a result of being classified as such. See R.C. 2950.13(A)(11). Accordingly, this Court finds that the trial *Page 32 
court did not err in classifying G.E.S. as a Tier III sexually oriented offender with regard to the Equal Protection Clause because G.E.S. has not proven that delinquent children classified under AW A are similarly situated to adult offenders classified under AWA. Accordingly, G.E.S.'s fourth assignment of error is overruled.
III {¶ 60} G.E.S.'s first, second, and fourth assignments of error are overruled. His third assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to Appellant. *Page 33 
SLABY, P. J. DICKINSON, J., CONCUR
[1] See Ohio Office of Criminal Justice Services, Report to the OhioCriminal Sentencing Commission: Sex Offenders (January 2006), available at:http://www.ocjs.state.oh.us/Research/Sex%20Offender%20Report%20pdf.pdf
(explaining that while up to eight-five percent of sex offenders are first time offenders, offenders generally admitted "to having committed multiple offenses prior to being arrested" for which they were never caught and generally underreported the sex offenses that they committed). See, also, Scott I. Vrieze William M. Grove,Predicting Sex Offender Recidivism. I. Correcting for Item Overselectionand Accuracy Overestimation in Scale Development. II. SamplingError-Induced Attenuation of Predictive Validity Over Base RateInformation, 32 Law Hum. Behav. 266 (June 2008) (discussing various problems in methods used to calculate sex offender recidivism rates and the corresponding problems with the reliability of those results).
[2] In so deciding, we do not imply that the mandatory nature of adult classification is necessarily unconstitutional. See discussion, supra, quoting Doe, 538 U.S. at 103-04.
[3] See Nicholas R. Barnes, The Polygraph and Juveniles:Rehabilitation or Overreaction? A Case Against the Current Use ofPolygraph Examinations on Juvenile Offenders, 39 U. Tol. L.Rev. 669 (2008) (discussing the reliability and efficacy of polygraph examinations performed on juvenile sex offenders); In re D.S.,111 Ohio St.3d 361, 2006-Ohio-5851, at ¶ 7-16 (rejecting the juvenile court's order that a juvenile pass a "full disclosure polygraph" as a condition to probation while noting the "ongoing debate about the success of polygraph use with juvenile sex offenders").
[4] Both the pre-AWA and the current AWA section 2152.83(A)(1) of the Revised Code contain the quoted language.
[5] The Court included the same statutory references in its journal entry determining G.E.S.'s classification. *Page 1