OPINION *Page 2 
{¶ 1} Respondent-Appellant, the State of Ohio, through the Ohio Attorney General's Office, appeals the Richland County trial court's ruling finding Senate Bill 10, Ohio's sexual offender classification and registration scheme, to be unconstitutional in its entirety.
 {¶ 2} On May 3, 2000, Petitioner-Appellee entered a guilty plea to one count of attempted rape. He was sentenced to six years in prison and was found to be a sexually oriented offender. In December, 2007, Appellee received notification of his reclassification as a Tier III offender under recently enacted Senate Bill 10, Ohio's response to the federal Adam Walsh Act.
 {¶ 3} Appellee's classification as a Tier III offender requires him to register his address every 90 days with the sheriff in the county in which he resides; restricts him from living within 1000 feet of a school, daycare center, or preschool; and allows for community notification of his personal information, including his address, photograph, email addresses, fingerprints, and travel information.
 {¶ 4} Appellee filed a declaratory judgment action in the Richland County Court of Common Pleas, seeking a declaration that Senate Bill 10 is unconstitutional. He argued that Senate Bill 10 is unconstitutionally retroactive, that it violates the prohibition against ex post facto laws, that it interferes with his right to contract because it required the state to breach his plea agreement, that it violates the separation of powers doctrine and constitutes a double jeopardy violation, and that it violates both procedural and substantive due process. *Page 3 
 {¶ 5} The trial court found that Senate Bill 10 was unconstitutional both facially and as applied to Appellee because it violated the prohibitions against both retroactive and ex post facto laws. The court distinguished the facts of Appellee's case from the Supreme Court's ruling in State v. Cook (1998), 83 Ohio St.3d 404, 1998-Ohio-291,700 N.E.2d 570, (holding that Megan's Law [Ohio House Bill 180, enacted in 1996] was not unconstitutionally retroactive), on the basis that the current law reclassifies and changes the substance of the reporting requirement, imposes a criminal penalty for violating the law, and dictates where an offender may reside based on a new classification. The trial court found application of Senate Bill 10 imposed new and additional burdens on Appellee, as he is now required to register every 90 days for life instead of once a year for ten years, and the new law bases classification solely on the crime of which the offender was convicted, removing the trial court's discretion to determine the likelihood of reoffending.
 {¶ 6} Additionally, the trial court determined that Senate Bill 10 is an unconstitutional ex post facto law. The trial court placed heavy reliance on Mikaloff v. Walsh (N.D. Ohio), No. 5:06-CV-96,2007 WL 2572268, wherein the federal district court found that the requirement that an offender not live within 1000 feet of a school, daycare center, or preschool violates the ex post facto clause. Despite the Ohio Supreme Court's finding in Cook that Megan's law was not punitive in intent or effect, and that it therefore did not violated the ex post facto clause, the trial court found Senate Bill 10 to be punitive. Specifically, the trial court opined, "an observer who visits the courtroom when sex offenders are sentenced will see that sex offenders usually view the sex offender labeling, registration and community notification requirements as *Page 4 
the most punitive and most odious part of their sentence. Being publicly branded as a pariah is the most lasting part of their sentences." The trial court concluded that "only a person protected by legal training from the ordinary way people think could say, with a straight face, that this terrible consequence of a sex offender's conviction is not punishment."
 {¶ 7} The trial court overruled Appellee's claim regarding the prohibition against impairment of contracts in Article II, Section 28 of the Ohio Constitution ("the Contract Clause"). In doing so, however, the trial court held that "if" Appellee's prior sex offender classification was part of his plea agreement, and "if [SB 10] requires the State to breach its agreement with Mr. Sigler, [then] it would be an unconstitutional interference with the right to contract." However, Appellee failed to place his written plea agreement into the record of this case.
 {¶ 8} The trial court rejected Appellee's remaining claims, finding that Senate Bill 10 did not violate the doctrines of separation of powers, double jeopardy, or procedural and substantive due process.
 {¶ 9} Appellant, State of Ohio, through the Ohio Attorney General's Office, filed a notice of appeal, raising four assignments of error. Appellee did not file a cross appeal, challenging the court's rulings against Appellee.
 {¶ 10} Appellant's four Assignments of Error are as follows:
 {¶ 11} "I. THE TRIAL COURT ERRED IN INVALIDATING "THE ADAM WALSH ACT" IN ITS ENTIRETY, ON ITS FACE, WHEN THE VAST MAJORITY OF THE STATUTORY PROVISIONS ENACTED THROUGH THAT LEGISLATION WERE NOT *Page 5 
PROPERLY BEFORE THE COURT AND THERE WAS NO SHOWING OF FACIAL UNCONSTITUTIONALITY.
 {¶ 12} "II. THE TRIAL COURT ERRED IN HOLDING THAT SENATE BILL 10 WAS UNCONSTITUTIONAL IN VIOLATION OF ARTICLE II, SECTION 28 OF THE OHIO CONSTITUTION, THE RETROACTIVITY CLAUSE.
 {¶ 13} "III. THE TRIAL COURT ERRED IN HOLDING THAT SENATE BILL 10 WAS UNCONSTITUTIONAL IN VIOLATION OF ARTICLE 1, SECTION 10 OF THE UNITED STATES CONSTITUTION, THE EX POST FACTO CLAUSE.
 {¶ 14} "IV. THE TRIAL COURT ERRED IN HOLDING THAT SENATE BILL 10 WAS UNCONSTITUTIONAL IN VIOLATION OF ARTICLE II, SECTION 28 OF THE OHIO CONSTITUTION, THE RIGHT TO CONTRACT CLAUSE."
 {¶ 15} Prior to addressing the merits of Appellant's claims, we must first address a jurisdictional issue raised by Appellee. Appellee asserts that this Court is without jurisdiction to hear this matter because the Attorney General's office is not authorized to act on behalf of the State of Ohio pursuant to R.C. 2950.031(E) and because Appellant failed to file for leave to appeal under R.C. 2945.76 based on the fact that the trial court ruled Senate Bill 10 punitive in nature. We disagree.
 {¶ 16} This is a civil matter, as evidenced initially by the manner in which Appellee filed his claim. This matter was filed as a declaratory judgment action with a civil case number (2007-CV-1863). The trial court decided the matter in a civil posture, titling his entry "Order on Complaint for Declaratory Judgment."
 {¶ 17} Declaratory judgment actions are civil in nature. Renee v.Sanders (1953), 160 Ohio St. 279, 116 N.E.2d 420 syllabus at ¶ 1;State v. Cole, 5th Dist. No. 2004-CA-108, *Page 6 2005-Ohio-3048. Moreover, since this is a civil matter, R.C. 2945.67 is inapplicable, as it applies to appeals from the "decision of a trial court in a criminal case."
 {¶ 18} The Attorney General is authorized to appear and be heard in declaratory judgment actions. See Ohioans for Fair Representation v.Taft (1993), 67 Ohio St.3d 180, 616 N.E.2d 905; Cicco v.Stockmaster (2000), 89 Ohio St.3d 95, 2000-Ohio-434, 728 N.E.2d 1066. See also R.C. 2721.12(A) (requiring that a party seeking a declaration that a statute is unconstitutional must serve the Ohio Attorney General with a copy of the complaint and shall be heard). Accordingly, the Attorney General is the proper party to bring this appeal and Appellee's jurisdictional argument is without merit.
 I, II III {¶ 19} In Appellant's first, second, and third assignments of error, Appellant contends that the trial court erred in finding Senate Bill 10 to be unconstitutional on multiple grounds.
 {¶ 20} The trial court found the whole of Senate Bill 10 to be facially unconstitutional and unconstitutional as applied to Appellee, stating that Senate Bill 10 violates Article II, Section 28 of the Ohio Constitution's Retroactivity Clause and that it violates Article I, Section 10, of the United States Constitution's prohibition against Ex Post Facto laws. The trial court also stated that if Appellee could prove that his sexually oriented offender status was part of his plea agreement, then Senate Bill 10 would also interfere with his right to contract pursuant to Article II, Section 28 of the Ohio Constitution. We disagree on all counts. *Page 7 
 {¶ 21} Ohio has had some form of a sex offender registration statute since 1963. See former R.C. Chapter 2950, 130 Ohio Laws 669. In 1996, the General Assembly rewrote R.C. Chapter 2950 as part of Am. Sub. H.B. No. 180 ("H.B. 180"), 146 Ohio Laws, Part II, 2560, 2601. House Bill 180 was passed in May, 1996, and signed by the governor in July 1996. Some provisions became effective January 1, 1997, including the classification provision, R.C. 2950.09. Section 3 of H.B. 180, 146 Ohio Laws, Part II, 2668. Other provisions, such as the registration and notification requirements, R.C. 2950.04, .05, .06,. 10, and .11, became effective July 1, 1997. Section 5 of H.B. 180, 146 Ohio Laws, Part II, 2669.[1] See State v. Cook, 83 Ohio St.3d at 407.
 {¶ 22} The General Assembly, in repealing and reenacting R.C. Chapter 2950, in 1996, stated that its intent was "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). Moreover, they stated that "[i]f the public is provided adequate notice and information about sexual predators, habitual sex offenders, and certain other offenders who commit sexually oriented offenses, members of the public and communities can develop constructive plans to prepare themselves and their children for the sexual predator's, habitual sex offender's, or other offender's release from imprisonment, a prison term, or other confinement. This allows members of the public and communities to meet with members of law enforcement agencies to prepare and obtain information about the rights and responsibilities of the public and the *Page 8 
communities and to provide education and counseling to their children." R.C. 2950.02(A)(1). See State v. Cook, supra.
 {¶ 23} The General Assembly also stated that "[s]exual predators and habitual sex offenders pose a high risk of engaging in further offenses even after being released from imprisonment, a prison term, or other confinement and that protection of members of the public from sexual predators and habitual sex offenders is a paramount governmental interest." R.C. 2950.02(A)(2). Finally, the General Assembly stated that "[a] person who is found to be a sexual predator or a habitual sex offender has a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government." R.C. 2950.02(A)(5). See Cook, supra.
 {¶ 24} That version of R.C. 2950.01 et seq. remained Ohio's sex offender registration and notification law until 2007. As a result of the federal Adam Walsh Act, Ohio passed Senate Bill 10, effective July 1, 2007, which again reorganized Ohio's sex-offender registration scheme. Instead of having three levels for "sexually oriented offenders," "habitual sex offenders," and "sexual predators," the new law employs three "Tiers," and it assigns offenders to such tiers based on the offense of conviction and/or the number of convictions. See R.C. 2950.01(E), (F), (G).
 {¶ 25} Effective January 1, 2008, Tier I offenders must register for fifteen years and must periodically verify their residence address with the sheriff on an annual basis. R.C. 2950.05(B)(3); R.C. 2950.06(B)(1). Tier II offenders must register for twenty-five years and periodically verify every 180 days. R.C. 2950.05(B)(2); R.C. 2950.06(B)(2). Tier III offenders must register for the rest of their life and periodically verify every 90 days. R.C. 2950.05(B)(1); R.C. 2950.06(B)(3). Tier III offenders are also subject to *Page 9 
community notification, under which the sheriff is required to notify the offender's neighbors and certain other persons in the community of the offender's residence, offense, and Tier III status. R.C. 2950.11.
 {¶ 26} Appellee, who was previously classified as a sexually oriented offender under Ohio's version of Megan's law, is now classified as a Tier III offender based upon his convictions. R.C. 2950.01(G)(1)(h).
 {¶ 27} The General Assembly expressly provided that the new registration system would apply to offenders who were currently registering. For registrant-offenders not currently in prison, the Attorney General would determine which tier the registrant-offender would belong to. R.C. 2950.031(A)(1). The Attorney General was required to send registered letters to the offenders by December 1, 2007, informing the registrant-offenders of their new tier classification and their new duties thereunder. R.C. 2950.031(A)(2). Offenders are permitted to challenge the new registration requirements by filing a petition in the common pleas court in their county of residence. R.C. 2950.031(E). Similar transition provisions were put in place for the Attorney General to reclassify sex offenders who are currently in prison. See R.C. 2950.032.
 {¶ 28} Another provision added by Senate Bill 10 allows a Tier III offender to avoid community notification under R.C. 2950.11 "if a court finds at a hearing after considering the factors described in this division that the person would not be subject to the notification provisions of this section that were in the version of this section that existed immediately prior to the effective date of this amendment." R.C. 2950.11(F)(2). The statute sets forth the factors that the court "shall consider," and these are the same as those factors that courts were required to consider under prior law in determining *Page 10 
whether the offender is a sexual predator, see R.C. 2950.11(F)(2)(a) — (i) (k), except that the new law adds a factor (j) to consider whether the offender would have been considered a habitual sex offender. Appellee did not request such a hearing.
 {¶ 29} Ohio's old registration system was repeatedly found to be constitutional. State v. Cook (1998), 83 Ohio St.3d 404, 700 N.E.2d 570,State v. Williams, 88 Ohio St.3d 513, 2000-Ohio-428, 728 N.E.2d 342;State v. Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110. The changes in the new registration system do not change the system so as to make it unconstitutional. The new registration system, just as much as the old, permissibly considers prior convictions in regulating current conditions and circumstances, and it does so without taking away any vested right and without imposing an additional "punishment."
 {¶ 30} Moreover, courts across Ohio have upheld Senate Bill 10 as being constitutional based on various challenges. State v.Desbiens, 2nd Dist. No. 22489, 2008-Ohio-3375; see, also,State v. King, 2nd Dist. No. 08-CA-02, 2008-Ohio-2594, appeal allowed, 119 Ohio St.3d 1471, 2008-Ohio-4911, dismissed, ___ Ohio St.3d ___, 2008-Ohio-6417; In re Gant, 3rd Dist. No. 1-08-11, 2008-Ohio-5198; In re Smith, 3rd Dist. No. 1-07-58, 2008-Ohio-3234, appeal allowed, ___ Ohio St.3d ___,2008-Ohio-6166; State v. Countryman, 4th Dist. No. 08CA12, 2008-Ohio-6700, State v. Longpre, 4th Dist. No. 08CA3017, 2008-Ohio-3832; In re Adrian R., 5th Dist. No. 08-CA-17, 2008-Ohio-6581; State v. Gooding, 5th Dist. No. 08 CA 5, 2008-Ohio-5954; Montgomery v. Leffler, 6th Dist. No. H-08-011, 2008-Ohio-6397; State v. Bodyke, 6th Dist. Nos. H-07-040, H-07-041, H-07-042, 2008-Ohio-6387; State v. Byers, 7th Dist. No. 07 CO 39, 2008-Ohio-5051; State v.Ellis, 8th Dist. No. 90844, 2008-Ohio-6283; State v.Holloman-Cross, 8th *Page 11 
Dist. No. 90351, 2008-Ohio-2189; State v. Ralston, 9th
Dist. No. 08CA009384, 2008-Ohio-6347; State v. Honey, 9th
Dist. No. 08CA0018-M, 2008-Ohio-4943; In re G.E.S., 9th
Dist. No. 24079, 2008-Ohio-4076; State v. Gilfillan, 10th
Dist. No. 08AP-317, 2009-Ohio-1104; State v. Swank, 11 Dist. No. 2008-L-019, 2008-Ohio-6059; State v. Williams, 12th Dist. No. CA2008-02-029, 2008-Ohio-6195.
A. General Constitutionality Principles {¶ 31} Statutes enjoy a strong presumption of constitutionality. "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." Cook, 83 Ohio St.3d at 409, 700 N.E.2d 570, quoting State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142,128 N.E.2d 59, paragraph one of the syllabus. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." Id. at 147, 128 N.E.2d at 63. "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." Id., quoting Xenia v. Schmidt (1920), 101 Ohio St. 437,130 N.E. 24, paragraph two of the syllabus; State ex rel. Durbin v.Smith (1921), 102 Ohio St. 591, 600, 133 N.E. 457, 460;Dickman, 164 Ohio St. at 147, 128 N.E.2d at 63.
 {¶ 32} As such, we begin with a strong presumption that R.C. Chapter 2950 is constitutional. Moreover, we review questions of constitutionality under a de novo standard of review and need not give weight to the trial court's determination that *Page 12 
R.C. Chapter 2950 is unconstitutional both facially and as applied to Appellee. See State v. Cook, supra.
B. Retroactivity {¶ 33} The trial court held that applying R.C. Chapter 2950 to offenses committed prior to the effective date of the statute renders the statute unconstitutional as a retroactive law prohibited by Section 28, Article II of the Ohio Constitution.
 {¶ 34} Section 28, Article II of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws."
 {¶ 35} Statutes are presumed to apply only prospectively unless specifically made retroactive. R.C. 1.48. In Cook, the Supreme Court stated that "the issue of whether R.C. 2950.09 may be constitutionally applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100,522 N.E.2d 489, paragraph one of the syllabus. We find that the General Assembly so specified." Cook, supra, at 410.
 {¶ 36} In so determining, the Cook court found that R.C. 2950.09(C)(1) applied to sex offenders who were convicted and sentenced prior to the effective date of the statute and who were still imprisoned when the statute became effective. Second, the registration and verification requirements were also applicable to certain sex offenders whose crimes occurred before the effective date. See, e.g., R.C. 2950.04(A). Third, the community notification provisions applied regardless of when the offense was committed. See, e.g., former R.C. 2950.11(A). Finally, failure to comply with the registration and verification requirements constituted a crime regardless of when the *Page 13 
underlying offense was committed. See former R.C. 2950.06(G)(1) and2950.99. Consequently, the Cook court found "a clearly expressed legislative intent that R.C. Chapter 2950 be applied retrospectively."
 {¶ 37} Having determined that R.C. 2950.09 met the threshold test for retroactive application pursuant to R.C. 1.48, the court then turned to whether it violated Section 28, Article II of the Ohio Constitution, and found that it did not.
 {¶ 38} In so determining, the court analyzed whether R.C. Chapter 2950
is substantive or merely remedial. Id., at 411, citing Van Fossen,36 Ohio St.3d 100, 522 N.E.2d 489, paragraph three of the syllabus.
 {¶ 39} A statute is "substantive" if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to a past transaction, or creates a new right. Van Fossen, at 107, 522 N.E.2d at 496. Remedial laws, however, are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right. Id. at 107, 522 N.E.2d at 497. A statute that is solely remedial does not violate Section 28, Article II
of the Ohio Constitution, even if applied retroactively. See id. at 107,522 N.E.2d at 496. Laws that relate to procedures are ordinarily remedial in nature, even if they have an "occasional substantive effect." Id. at 107-108, 522 N.E.2d at 497, citing Wellston Iron FurnaceCo. v. Rinehart (1923), 108 Ohio St. 117, 140 N.E. 623, paragraph one of the syllabus.
 {¶ 40} The court concluded that the registration and notification provisions of R.C. 2950 were de minimis procedural requirements that are necessary to achieve the community protection goals of R.C. 2950, and therefore were remedial in nature. *Page 14 
 {¶ 41} We find that the new imposition of lifetime quarterly registration and community notification on Appellee is valid under Article II, Section 28, of the Ohio Constitution. Senate Bill 10 does not "impos[e] new duties and obligations upon a person's past conduct and transactions * * *." Personal Serv. Ins. Co. v. Mamone (1986),22 Ohio St.3d 107, 109, 489 N.E.2d 785, quoting Lakengren v. Kosydar
(1975), 44 Ohio St.2d 199, 201, 339 N.E.2d 814. Conduct or transactions are "past" only if there is a "reasonable expectation of finality" as to those matters. State ex rel. Matz v. Brown(1988), 37 Ohio St.3d 279,281-82, 525 N.E.2d 805. The commission of a felony does not create such a reasonable expectation of finality. Id.
 {¶ 42} Registration and community notification are also remedial, non-punitive measures, so that they may be applied to prior offenders.Cook, 83 Ohio St.3d at 413-14. Alaska's system of lifetime, quarterly registration and its internet registry were upheld as valid, non-punitive measures to protect the public in Smith v. Doe (2003),538 U.S. 84. "[R]egistration and verification provisions are remedial in nature and do not violate the ban on retroactive laws * * *."Cook, supra at 413. "We cannot conclude that the Retroactivity Clause bans the compilation and dissemination of truthful information that will aid in public safety." Id. "[D]issemination provisions do not impinge on any reasonable expectation of finality defendant may have had with regard to his conviction * * *." Id. at 414.
 {¶ 43} Nor can Appellee claim a reasonable expectation of finality because he was initially processed under the old system without community notification having been required. "[N]o one has a vested right in having the law remain the same over time. If by relying on existing law in arranging his affairs, a citizen were made secure against *Page 15 
any change in legal rules, the whole body of our law would be ossified forever." East Liverpool v. Columbiana Cty. Budget Comm.,114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, at ¶ 30. In addition, community notification has already been deemed a non-punitive regulatory matter that could be newly imposed on prior offenders, even those had not been subject to any sex-offender registration laws at all before.Cook, supra; Williams, supra. If entirely new sex offender registration and notification provisions could be imposed on old offenders, then it is reasonable that the General Assembly could take the smaller step here of adding to the sex offender registration and notification provisions that were already applicable to Appellee and to other sex offenders within the system.
 {¶ 44} While this Court certainly recognizes that sex offenders may become ostracized by society and may be harassed due to the requirements of R.C. Chapter 2950, "an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right; infringement of more `tangible interests' must be alleged as well."Cook, at 413, quoting Borucki v. Ryan (C.A.1, 1987), 827 F.2d 836,842-843. Moreover, "[t]he harsh consequences [of] classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions." Id., quoting State v. Lyttle (Dec. 22, 1997), 12th Dist. No. CA97-03-060.
 {¶ 45} As the Cook court noted, dissemination of information regarding convictions has always been public record. Specifically, the court stated, "The General *Page 16 
Assembly struck a balance between the privacy expectations of the offender and the paramount governmental interest in protecting members of the public from sex offenders. We cannot conclude that the Retroactivity Clause bans the compilation and dissemination of truthful information that will aid in public safety. In addition, this dissemination requirement imposes no burden on the defendant; the duty to notify the community applies only to the sheriff with whom the defendant has most recently registered." Id. at 413.
 {¶ 46} Accordingly, Appellee had no reasonable expectation of finality with respect to his convictions and he had no substantive right in this regard. See id., citing Matz, 37 Ohio St.3d at 281, 525 N.E.2d at 808. "Ohio retroactivity analysis does not prohibit all increased burdens; it prohibits only increased punishment. In distinguishing between the two, we are mindful that the Supreme Court has noted that `whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the `sting of punishment,' * * * and that a statutory scheme that serves a regulatory purpose `is not punishment even though it may bear harshly upon one affected.' `Consequences as drastic as deportation, deprivation of one's livelihood, and termination of financial support have not been considered sufficient to transform an avowedly regulatory measure into a punitive one.'" State v. Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824,896 N.E.2d 110, at ¶ 39.
 {¶ 47} Accordingly, we conclude that Senate Bill 10 does not violate the prohibition in Article II, Section 28 of the Ohio Constitution against retroactive laws. *Page 17 
C. Ex Post Facto {¶ 48} We further disagree that Senate Bill 10 imposes new and additional duties upon sex offenders that would classify the legislation as an Ex Post Facto law.
 {¶ 49} "To fall within the ex post facto prohibition, a law must be retrospective — that is `it must apply to events occurring before its enactment' — and it `must disadvantage the offender affected by it' * * * by altering the definition of criminal conduct or increasing the punishment for the crime * * *." Lynce v. Mathis (1997), 519 U.S. 433,442, 117 S.Ct. 891, 137 L.Ed.2d 63 (citations omitted). In the present case, the longer and more frequent registration and community notification provisions are neither "retroactive" nor "punishment."
 {¶ 50} As previously discussed, in Cook, supra, the Ohio Supreme Court determined that the old system effective in 1997 was "retroactive" because it looked to the prior conviction as a starting point for regulation. Cook, 83 Ohio St.3d at 410. Even so, the Court upheld the old system because it had a valid remedial and non-punitive purpose.
 {¶ 51} Increased registration duties and the addition of community notification do not attach new consequences to old, completed events but rather regulate current conditions and ongoing events. The purpose is to authorize longer registration periods and community notifications on a prospective basis so that persons may act on an informed basis in dealing with sex offenders.
 {¶ 52} Admittedly, the new system ties offenders' current status, and in this case, Appellee's new Tier III status, to the offender's prior conviction. But the ultimate concern remains the danger of recidivism, which is an ongoing matter of concern. The *Page 18 
old system required an express finding of a likelihood of reoffending by clear and convincing evidence in order for the offender to be found to be a sexual predator subject to lifetime quarterly registration and community notification. However, such a finding was not constitutionally required. Instead, the General Assembly could adopt a categorical system, as it has now done, dependent on prior conviction(s) alone.
 {¶ 53} Such categories "are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective."Smith v. Doe, 538 U.S. at 102. "Sex offenders are a serious threat in this Nation." Conn. Dept. of Public Safety v. Doe (2003), 538 U.S. 1, 4. "The risk of recidivism posed by sex offenders is frightening and high," see Smith, 538 U.S. at 103 (internal quotes omitted), and the General Assembly could conclude that "a conviction for a sex offense provides evidence of substantial risk of recidivism." Id. at 103. "The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specific crimes should entail particular regulatory consequences." Id. at 103. The State can "legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness," and "can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions * * *." Id. at 104.
 {¶ 54} The United States Supreme Court and the Ohio Supreme Court have explained why the use of prior convictions in this manner is not "ex post facto" or "retroactive." In Hawker v. New York (1898),170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002, the Court struck down an ex post facto challenge to a New York statute that prohibited persons with felony convictions from practicing medicine. The Court *Page 19 
determined that New York had good grounds for being concerned about the character of its physicians, stating:
 {¶ 55} "That the form in which this legislation is cast suggests the idea of the imposition of an additional punishment for past offences is not conclusive. We must look at the substance and not the form, and the statute should be regarded as though it in terms declared that one who had violated the criminal laws of the State should be deemed of such bad character as to be unfit to practice medicine, and that the record of a trial and conviction should be conclusive evidence of such violation. All that is embraced in these propositions is condensed into the single clause of the statute, and it means that and nothing more. The State is not seeking to further punish a criminal, but only to protect its citizens from physicians of bad character." Id. at 196.
 {¶ 56} Similar language is found in DeVeau v. Braisted (1960),363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109, which recognized that prior convictions could be used "as a relevant incident to a regulation of a present situation * * *." Id. at 160.
 {¶ 57} The Ohio Supreme Court reached similar conclusions in State exrel. Matz v. Brown (1988), 37 Ohio St.3d 279, 525 N.E.2d 805, which addressed the constitutionality of a statute that prevented persons convicted of a felony within the past ten years from receiving compensation under the Victims of Crime Act. The Court rejected the relator's "retroactivity" contention, concluding that, "Except with regard to constitutional protections against ex post facto laws, no claim of which is made here, felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." Matz, 37 Ohio St.3d at 281-82. The Court recognized that there were "important public policy reasons for so holding. For example, if relator's *Page 20 
theory were to prevail no person convicted of abusing children could be prevented from school employment by a later law excluding such persons from that employment." Id. at 282.
 {¶ 58} Regarding registration and community notification, the issue of "punishment" turns on a two-prong analysis.
 {¶ 59} The categorization of a particular proceeding as civil or criminal "is first of all a question of statutory construction." Initially, we must determine whether the legislature meant the statute to establish "civil" proceedings. If so, we typically defer to the legislature's intent.
 {¶ 60} "Although we recognize that a `civil label is not always dispositive,' we will reject the legislature's manifest intent only where a party challenging the statute provides `the clearest proof' that `the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it `civil.' In those limited circumstances, we will consider the statute to have established criminal proceedings for constitutional purposes." Kansas v. Hendricks (1997),521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501, (citations omitted). A party faces a "heavy burden" when, despite a non-punitive legislative intent, he is claiming the statute imposes "punishment." Id.
 {¶ 61} Appellee falls far short of showing that registration and community notification constitute criminal "punishment." The General Assembly expressly stated its intent that these measures would be non-punitive and would be meant to serve the non-criminal purposes of aiding law enforcement, providing helpful information to the public, and protecting the public. R.C. 2950.02(A) (B). Moreover, Appellee has not *Page 21 
demonstrated by the "clearest proof" that the purpose or effect of notification is so punitive as to negate the General Assembly's intent that notification be treated as remedial.
 {¶ 62} The Ohio Supreme Court has repeatedly upheld registration and community notification in the old system as valid non-punitive measures. "Registration with the sheriff's office allows law enforcement officials to remain vigilant against possible recidivism by offenders. Thus, registration objectively serves the remedial purpose of protecting the local community." Cook, 83 Ohio St.3d at 417. "Registration allows local law enforcement to collect and maintain a bank of information on offenders. This enables law enforcement to monitor offenders, thereby lowering recidivism." Id. at 421. "Registration has long been a valid regulatory technique with a remedial purpose." Id. at 418. "R.C. Chapter 2950 has the remedial purpose of providing law enforcement officials access to a sex offender's registered information in order to better protect the public." Id. at 419.
 {¶ 63} Moreover, registration and notification provisions "have the remedial purpose of collecting and disseminating information to relevant persons to protect the public from registrants who may reoffend."Cook, 83 Ohio St.3d at 420. "Notification provisions allow dissemination of relevant information to the public for its protection." Id. at 421. "[N]otification requirements may be a detriment to registrants, but the sting of public censure does not convert a remedial statute into a punitive one." Id. at 423.
 {¶ 64} An offender has no "privacy" right to have the community be ignorant of his conviction. Williams, 88 Ohio St.3d at 525-26. "Nor does the fact that the government is required to actively disseminate information collected from convicted *Page 22 
sexual offenders, rather than merely allowing the public access, impact the right to privacy. Active distribution, as opposed to keeping open the doors to government information, is a distinction without significant meaning. The information at issue is a public record, and its characteristic as such does not change depending upon how the public gains access to it." Id. at 526.
 {¶ 65} "Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental interest as punishment." Smith, 538 U.S. at 98. "The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender." Id. at 99. The General Assembly's non-punitive purpose is properly furthered by alerting the public to the risk of sex offenders in the community. Id. at 102-103.
 {¶ 66} The deletion of the likelihood-of-reoffending criterion does not change the foregoing analysis. As stated before, the General Assembly can regulate in a categorical way tied to the nature of the conviction. Smith, supra.
 {¶ 67} "A statute is not deemed punitive simply because it lacks a close or perfect fit with the non-punitive aims it seeks to advance."Smith, 538 U.S. at 103. The legislature is allowed to make categorical judgments. Id. "Under the rational basis standard, we are to grant substantial deference to the predictive judgment of the General Assembly." Williams, 88 Ohio St.3d at 531.
 {¶ 68} The trial court below opined that sex offenders "usually view the sex offender labeling, registration and community notification requirements as the most punitive and most odious part of their sentence. Being publicly branded as a pariah is the most lasting part of their sentences. It has sometimes been an invitation to vigilante *Page 23 
action." Being a "pariah," suffering a "stigma" or losing a "favorable reputation" are not liberty or property interests protected by due process. Williams, 88 Ohio St.3d at 527, citing Paul v. Davis (1976),424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405. While the trial court may speculate that a registrant might suffer illegal acts of harassment or "vigilante action", it is generally presumed that private individuals — the vast majority of whom are law-abiding — will obey the law.Jacobson v. United States (1992), 503 U.S. 540, 551, 112 S.Ct. 1535,118 L.Ed.2d 174, ("most people obey the law even when they disapprove of it."). There are laws in place to deal with harassment.Williams, 88 Ohio St.3d at 527. The ex post facto prohibition only applies to the "State" and not to illegal private acts of harassment.
 {¶ 69} Revised Code Chapter 2950 serves the purpose of protecting the public. Accordingly, there is no clear proof that it is punitive in nature. See Cook, supra, at 423. "We do not deny that the notification requirements may be a detriment to registrants, but the sting of public censure does not convert a remedial statute into a punitive one." Id. citing Kurth Ranch, 511 U.S. at 777, 114 S.Ct. at 1945,128 L.Ed.2d at 777, fn. 14.
 {¶ 70} Moreover, Appellee's argument that the legislature intended Senate Bill 10 to be punitive because the statute criminalizes an offender's failure to comply with the registration and verification requirements is without merit.
 {¶ 71} As the Twelfth Appellate District stated in State v.Williams, 12th Dist. No. CA2008-02-029, "Failure to register was already a punishable offense before former R.C. Chapter 2950. See Cook, 83 Ohio St.3d at 420, 700 N.E.2d 570. As the Ninth Appellate District stated, `these provisions do not impact [Senate Bill 10's] remedial nature. The pre-[Senate Bill 10] statutory scheme also criminalized an offender's failure *Page 24 
to comply with the registration and verification requirements. See former R.C. 2950.06(G)(1); former R.C. 2950.99. [In Cook ], the Ohio Supreme Court specifically noted these provisions in its retroactivity discussion, but did not identify these provisions as presenting a problem in its Ex Post Facto analysis. * * * See, also, Doe, 538 [U.S.] at 101-102 (noting that criminal prosecution for failure to comply with SORA's reporting requirements is a proceeding separate from the individual's original offense). Furthermore, [the offender] has not provided any law that demonstrate that [Senate Bill 10's] penalties are more burdensome than the former penalties or make formerly innocent conduct criminal .' In re G.E.S., 2008-Ohio-4076, ¶ 23." Id. at ¶ 46. Accordingly, simply because Senate Bill 10 criminalizes an offender's failure to comply with the registration and verification requirements does not make the bill punitive in nature.
 {¶ 72} Additionally, simply because Senate Bill 10 was placed in Title 29, Ohio's Criminal Code, does not mean that Senate Bill 10 is punitive. "`The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one.' Doe, 538 U.S. at 94. As the Seventh Appellate District aptly stated, `[former] R.C. Chapter 2950
was within the criminal code, yet the Ohio Supreme Court determined that it was civil in nature. While [Senate Bill 10] is in the criminal code, that placement is not dispositive of the issue, especially since the legislature specifically indicated the intent to be civil.'Byers, 2008-Ohio-5051, ¶ 27; see, also, King, 2008-Ohio-2594, ¶ 12;In re G.E.S., 2008-Ohio-4076, ¶ 21-22." Williams, supra, at ¶ 48.
 {¶ 73} Finally, Appellee's argument that classification based on the offense of conviction alone constitutes retribution is not well taken. "`By tying an offender's *Page 25 
classification to the offense committed rather than to an individual assessment of dangerousness, the [legislature] merely adopted an alternative approach to the regulation and categorization of sex offenders. In [Doe], the United States Supreme Court expressly rejected an argument that Alaska's sex-offender registration obligations were retributive because they were based on the crime committed rather than the particular risk an offender posed. * * * Similarly, the [Doe] court rejected the notion that deterrence resulting from Alaska's statute was sufficient to establish a punitive effect.' King at ¶ 22." Id. at ¶ 71
 {¶ 74} We therefore conclude that the registration and notification requirements of R.C. 2950 do not violate the Ex Post Facto clause because the law is remedial in nature. Appellant's first, second, and third assignments of error are sustained.
 IV. {¶ 75} In its fourth assignment of error, Appellant argues that the trial court erred by finding Senate Bill 10 to be unconstitutional on the basis that it violates the right to contract pursuant to Article II, Section 28 of the Ohio Constitution. We agree.
 {¶ 76} The trial court, in tentatively denying Appellee's argument on this ground, issued a somewhat advisory opinion, stating:
 {¶ 77} "Mr. Sigler has also alleged that his reclassification constitutes a breach of contract and an impairment of an obligation of contract in violation of Article II, Section 28 of the Ohio Constitution. Mr. Sigler apparently contends that his sex offender classification was part of the plea agreement in his case — that if he pled guilty, he was promised as a part of the deal that he would be classified as a `sexually oriented offender.' One recent Ohio case addressed this challenge and found it to be without *Page 26 
merit. Slagle v. State, 145 Ohio Misc.2d at 114. In Slagle, the court determined that once a defendant pleads guilty and the court sentences him, the defendant and the State have performed their respective part of the plea agreement. [Internal citation omitted]. Therefore, reasoned the court, no action by the State after the sentencing could breach the plea agreement.
 {¶ 78} "This court finds that the rationale of the Slagle court contradicts the well-settled law of contracts in Ohio. Like contracts, judicially sanctioned plea agreements are binding on both the State and the Defendant. See e.g., Layne v. Ohio Adult Parole Authority,97 Ohio St.3d 456, 464 (2002); State v. Butts, 112 Ohio App.3d 683, 686
(Cuyahoga Cty. 1996). This court cannot accept an argument that grants parties license to renege on their contractual obligations. If a seller contracts to sell goods to a buyer and subsequently, upon receiving payment, delivers those goods, he cannot thereafter re-take possession of them (or substitute less-desirable items) and still claim to have fully satisfied his contract. Similarly, once the State has agreed to a certain sex offender classification as part of a plea agreement, it cannot thereafter refuse to abide by the sentence or substitute an entirely different classification without breaching its contract.
 {¶ 79} "As this court has noted, the changes in restrictions and obligations imposed by the Adam Walsh Act are not insignificant. They involve substantial modifications to the restrictions and obligations in existence at the time Mr. Sigler accepted his plea agreement in 2000. Therefore, this court finds that, if the Adam Walsh Act requires the State to breach its agreement with Mr. Sigler, it would be an *Page 27 
unconstitutional interference with the right of contract guaranteed by the Ohio Constitution."
 {¶ 80} We would initially note that the record is devoid of any type of written plea agreement between the state and Appellee and therefore, we cannot presume that such an agreement as Appellee alleges exists. As such, there is no evidence that his sexually oriented offender status was part of his plea agreement.
 {¶ 81} Irregardless, after a guilty plea, an offender has "no reasonable right to expect that [his] conduct will never thereafter be made the subject of legislation." Cook, 83 Ohio St.3d at 412. Nor does he have any "vested right in having the law remain the same over time."City of East Liverpool, supra, 114 Ohio St.3d 133, 2007-Ohio-3758,870 N.E.2d 705, at ¶ 33. Accordingly, there could not be any realistic expectation on the part of a convicted felon that the General Assembly could not, during his lifetime, alter its treatment of felons.
 {¶ 82} Regarding whether or not a contract exists in a plea agreement scenario, we find the Ohio Supreme Court's decision in EpiscopalRetirement Homes v. Ohio Dept. of Indus. Relations (1991),61 Ohio St.3d 366, 575 N.E.2d 134 to be instructive. "In order to declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." Episcopal Retirement Homes v.Ohio Dept. of Indus. Relations (1991), 61 Ohio St.3d at 369,575 N.E.2d 134 (citations omitted).
 {¶ 83} "[A] plea agreement [need not] encompass all of the significant actions that either side might take. If the agreement does not establish a prosecutorial commitment * * *, we should recognize the parties' limitation of their assent." United *Page 28 States v. Fentress (C.A. 4, 1986), 792 F.2d 461, 464. A plea agreement should be treated as a fully integrated contract, and should not infer agreement from silence. See United States v. Anderson (C.A. 1, 1990),921 F. 2d 335, 338. Moreover, courts should not "imply" terms into a plea agreement. United States v. Benchimol (1985), 471 U.S. 453, 456,105 S.Ct. 2103, 85 L.Ed.2d 462.
 {¶ 84} Appellee contends that the law in effect at the time that he entered into his plea agreement is part of his "contract." Such an assertion causes this Court to inquire as to what the law in effect actually provided. The real issue is whether the law provided that the General Assembly could change things, and, as explained above, ex post facto and retroactivity principles do allow the General Assembly to impose new community notification on prior offenders. "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order."El Paso v. Simmons (1965), 379 U.S. 497, 508, 85 S.Ct. 577,13 L.Ed.2d 446. We find that Appellee is mistaken about his "law in effect" theory, as the law in effect contained no unalterable sex offender registration and notification provisions.
 {¶ 85} The trial court relied on Layne v. Ohio Adult ParoleAuth., 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, as a basis for finding that the State violated a plea agreement if the parties contracted that Appellee was a sexually oriented offender as part of his plea, but Layne is inapposite to the case at bar. First, inLayne, there was at least some legal basis there for saying that statutory law governing parole eligibility entered into the plea agreement. No unalterable sex offender registration and notification principle exists here. *Page 29 
 {¶ 86} Second, applying Layne in the present case presumes that the initial state actor reaching the plea agreement was in a position to bind the subsequent state actor to its decision. In Layne, it was the prosecutor purportedly binding the Parole Board, both agents of the Executive Branch. But no similar authority can be found here. Obvious separation-of-powers problems would be created if the Executive Branch purported to bargain away the Legislative Branch's ability to pass laws on a matter. Not even the legislative branch can bar future legislation.State ex rel. Public Institutional Bldg. Auth. v. Griffith (1939),135 Ohio St. 604, 619-20, 22 N.E.2d 200, ("No general assembly can guarantee the continuity of its legislation or tie the hands of its successors."). If the General Assembly itself cannot bar future legislative action, then certainly an Executive Branch official cannot do so by a mere contract, especially a contract that is silent on the matter.
 {¶ 87} Similarly, an "impairment of contract" argument lacks merit, as the prosecution made no contract to bar the General Assembly from modifying the sex offender registration and notification statutes. The sex offender registration and notification statutes themselves created no "contract." "[A]bsent a clearly stated intent to do so, statutes do not create contractual rights that bind future legislatures." State exrel. Horvath v. State Teachers Retirement Bd. (1998), 83 Ohio St.3d 67,76, 697 N.E.2d 644,. "Courts have coined the phrase `unmistakability doctrine' for this legal principle," and this doctrine "is useful not only in determining whether a contractual relationship exists, but also in `defining the contours' of any contractual obligation that is found to exist." Id. at 76. The "unmistakability doctrine" supports the view that no promise of *Page 30 
legislative inaction was "impliedly" made with respect to sex offender registration and notification laws in Ohio.
 {¶ 88} As such, we find that Senate Bill 10 does not violate Article II, Section 28 of the Ohio Constitution with respect to the right to contract. Appellant's fourth assignment of error is sustained.
 {¶ 89} For the foregoing reasons, we find Appellant's arguments to be meritorious and sustain all four assignments of error. Senate Bill 10 is constitutional and, as courts across the Ohio have repeatedly held, does not violate prohibitions against retroactive or ex post facto laws. The decision of the Richland County Court of Common Pleas is therefore reversed.
Delaney, J., Farmer, P.J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is reversed. Costs assessed to Appellee.
[1] This reorganization of Ohio's sex offender registration law was in response to the rape and murder of seven-year old Megan Kanka, in New Jersey by a convicted sex offender, Jesse Timmendequas, who had moved in with two other convicted child abusers across the street from the Kankas. Citizen groups in New Jersey started petitions, urging their governor to sign into effect sex offender notification legislation that would notify community members when convicted sex offenders moved into their neighborhoods. As a result, the governor signed "Megan's Law," which was legislation that included a provision for public notification. N.J. Stat.Ann. 2C:7-1 et seq. Currently, all fifty states have some form of sex offender registration and notification laws. *Page 1